STATE *ex rel* ROBERT BUTLER *vs.* J. F. CALLAHAN.

Opinion filed January 28th, 1895.

### Enforcement of Right to Office by Mandamus.

As a general rule the writ of mandamus issues to admit in office a candidate holding a valid certificate of election, who has qualified by taking the official oath, furnishing the prescribed official bond, and who has demanded possession of the incumbent.

### Holding Over—Intruder Not a De Facto Officer.

Where a *de facto* officer is exercising official functions under color of right, the writ does not issue to dispossess him; but where an incumbent is holding over after the expiration of his term, and until a successor is elected and qualified, and has no other claim to the office, he is not such *de facto* officer, as against a candidate who holds the proper certificate of election, and has qualified for the office in manner and form as the law directs. Such incumbent is a mere intruder, as against such relator.

### Title to Office Not Tried by Mandamus.

The prevailing rule of law is that the title to an office will not be tried by mandamus. Some states hold otherwise.

### Statutory Method of Trying Title to Office.

In this state the title to a county office may be tried either by the statutory mode of contest, as provided by §§ 1489-1501, Comp. Laws; or by a civil action in the nature of *quo warranto*, initiated by an official representative of the county, as provided by § 5345 *et seq.*, Comp. Laws.

### Prima Facie Title Admitted—Ultimate Title Not in Issue on Mandamus.

In mandamus against a county officer holding over after the expiration of his term; brought by a relator having a certificate of election, and who has duly qualified for the office by taking the oath and giving the required bond, the relator's *prima facie* title to the office cannot be defeated by an answer which admits the *prima facie* title, but contains averments of fact which involve the ultimate title of the relator to such office. Such an answer is demurrable if it contains only such facts as would, if established, defeat the relator's ultimate title, in a proper proceeding to try title.

### Right of Possession—And Ultimate Title Distinguished.

In this case it appears by the averments in the alternative writ that the relator has such *prima facie* title to the office of county superintendent of schools of Cass County, and has demanded possession of the defendant. Defendant's answer to the writ admits the facts constituting such *prima facie* title, and alleges, as new matter, that the relator, when his term commenced, and for some time prior thereto, did not have or hold the educational certificate prescribed by statute (§ 34, Ch. 62, Laws 1890,) or its equivalent. The trial

coŭrt sustained relator's demurrer to the answer.  *Held*, that such ruling was proper.  *Held*, further, that the new matter in the answer had reference only to the relator's ultimate title to the office, and such title cannot be litigated in this proceeding, which involves only the right of present possession.   In such cases the relator cannot be driven out of court by the mere fact that the incumbent pleads facts in his answer which call for a determination of the relator's ultimate title to the office, and only that title.

Appeal from District Court, Cass County; *McConnell,* J.

Application upon relation of Robert Butler against J. F. Callahan, to compel defendant to surrender to plaintiff possession of the office of county superintendent of schools.   From a judgment directing the issuance of a peremptory writ, defendant appeals.

Affirmed.

*Benton & Amidon,* for appellant.

Mandamus will not lie to try title to office.   Merrill on Mandamus, 143; McCrary on Elections, 322, Spelling Ext. Rel. 1572, 1510; *Peo.* v. *Barrett*, 8 N. Y. Supp. 677.   *Title* indicates election to the office and possession of the legal qualifications.   Mandamus does not lie except to enforce a clear legal right.   Merrill on Mandamus, 56; Meechem on Officers, 478; *Peo.* v. *Board*, 129 N. Y. 360; *Peo.* v. *Sheffield*, 47 Hun. 481; Spelling Ext. Rel. 1574, 1370, 1563.   The weight of authority is, that a person must possess the legal qualifications for an office at the time of his election as well as at the time of the commencement of the term. *Peo.* v. *Leonard,* 14 Pac. Rep. 853; *Privett* v. *Brickford,* 26 Kan. 53; *Demaree* v. *Scates,* 32 Pac. Rep. 1123; *Taylor* v. *Sullivan,* 47 N. W. Rep. 802.   Mandamus will not lie to instate a person in office who could be at once removed by *quo warranto.*   Spelling Ext. Rel. 1790–1; *State* v. *Clark*, 8 At Rep. 509.   Where the state calls upon an individual to show his title to office he must show the continued existence of every qualification necessary to the enjoyment of the office.   *Peo.* v. *Maywonn,* 5 Mich. 146; *State* v. *Glen,* 14 N. W. Rep. 481.

*Charles A. Pollock,* for respondent,

Callahan was neither a *de facto* nor a *de jure* officer. He is a usurper, an intruder. He has no title to try. *Supervisors* v. *O'Malley*, 46 Wis. 63; High Ex. Rem. 76. Want of qualification is a defense, which can only be made use of when title is being tried. *Att'y Gen'l* v. *McIver*, 25 N. W. Rep. 499. The person holding the certificate of election is *prima facie*, the officer *de facto* and *de jure*. *Peo.* v. *Kilduff*, 15 Ill. 502; *Peo.* v. *Head*, 25 Ill. 287; *Crowell* v. *Lambert*, 10 Minn. 375; *Atherton* v. *Sherwood*, 15 Minn. 221; *Supervisors* v. *O'Malley*, 46 Wis. 61; *DeArmond* v. *State*, 40 Ind. 469; *Parmenter* v. *State*, 3 N. E. Rep. 387; *State* v. *Board of Commissioners*, 25 N. E. Rep. 10; *O'Donnell* v. *Dusman*, 39 N. J. L. 677; *State* v. *Freeholders, etc.*, 35 N. J. L. 273–217; *Peo.* v. *Hillard*, 29 Ill. 419; *Territory* v. *Shearer*, 2 Dak. 346; *Stone* v. *Small*, 54 Vt. 498; *Discoll* v. *Jones*, 44 N. W. Rep. 726; *Matsker* v. *Neally*, 21 Pac. Rep. 206; *Hoffman* v. *Mills*, 18 Pac. Rep. 516.

The relator holding the certificate of election has the *prima facie* right to the office and is entitled to be recognized. *Robinson* v. *Supervisors*, 13 N. W. Rep. 622.

WALLIN, C. J. The dominating facts in this controversy, as they appear of record, may be stated as follows: The defendant was elected in 1892 to the office of county superintendent of schools of Cass County, and, having the requisite education certificate, duly qualified therefor, and entered upon the discharge of the duties of said office, and has ever since been an incumbent thereof, and now is exercising the functions of said office, and has possession of the office room in the court house, and the books and records of the office. At the election held in June, 1894, the defendant and relator were candidates, and the relator received a plurality of the votes cast for said office in Cass County; and pursuant to such election the relator received the proper certificate of his election, and subsequently, and on the 5th day of September, 1894, qualified for said office, by taking the official oath, and furnishing an official bond, which was approved. On the 6th day of October, 1894, the relator demanded of defendant the possession of the office room, and of the books and records

appertaining to the office, which demand was refused. Upon the relator's petition, an alternate writ of mandamus issued out of the District Court. The facts embodied in the writ, so far as they are now material, have been already stated. Upon the return day the defendant appeared by counsel, and moved to quash the alternative writ, chiefly upon the ground that the writ does not state facts sufficient to entitle the relator to the writ. The motion to quash was denied, whereupon defendant filed his answer to the writ. The answer fails to deny any of the material averments of fact set out in the alternative writ, and none of such facts are controverted. As new matter, the defendant pleads, in substance, the following facts: That the relator, at the commencement of the official term in dispute, and when this proceeding was instituted, did not have or hold the prescribed educational certificate, or its equivalent, as required by Ch. 62 of the Laws of 1890, and especially as prescribed by section 34 of said chapter, which is as follows: "No person shall be deemed legally qualified for the office of county superintendent unless he or she holds a certificate of the highest county grade or its equivalent." The last paragraph of the answer reads: "That, under the statute of this state creating said office of county superintendent, it is made the right and duty of the incumbent of said office to hold the same, and discharge its duties, until a successor is duly elected and qualified, and that this defendant is now, and has at all times been since the first Monday in October, 1894, ready and willing to turn over said office, together with all its insignia and property, to such a successor, and that the reason why defendant has refused, and still refuses, to turn over said office to the relator herein is that said relator is not now, and has not at any time since long prior to said first Monday in October, 1894, been qualified to hold said office, or discharge the duties thereof." To the defendant's answer the relator interposed a general demurrer, for insufficiency. The trial court sustained the demurrer, and, defendant having elected to stand upon the averments of his answer, judgment was entered below directing the peremptory writ to issue. In this

court, it is claimed by the defendant that the trial court erred in denying defendant's motion to quash the alternative writ, and also erred in sustaining the demurrer to the answer.

As has been seen the alternative writ avers, in effect, that the relator, after being elected, received the official certificate of election, and qualified for the office, pursuant to law, and subsequently demanded possession of the office and its records, and possession was refused. These facts being admitted by the motion to quash the writ, the question is presented whether such facts alone are sufficient to entitle the relator to the peremptory writ admitting him into the office. It will be observed that many facts which are vital, as affecting the relator's ultimate right or title to the office, are not set out in the alternative writ. Relator fails to aver that he is of full age, or that he is a resident of Cass County, or citizen of the United States, or of North Dakota. Nor does he allege that he possesses the prescribed educational certificate. If the omitted averments of fact above mentioned, or any of them, are essential, and must be alleged, before the writ can be invoked to instate in office a candidate who has been elected, and has qualified and demanded the possession, then the motion to quash should have been granted. We are clear that such omitted averments of fact are neither necessary nor proper in a case like this. The writ of mandamus issues to place a claimant of an office in possession, who holds the *prima facie* right to take possession; and, as will be seen hereafter, the prevailing rule is that a candidate who is elected, and who qualifies and properly demands possession, has the *prima facie* right of possession, as against a recalcitrating incumbent, who holds over after his term expires. It is quite true, however, and the doctrine is elementary, that the writ will not issue, either to admit into office, or try conflicting title thereto, where the incumbent is in the exercise of official functions, *de facto*, and under color of right. See authorities collected in 14 Am. & Eng. Enc. Law, p. 202, note 1; McCrary, Elect. § 322. This rule is invoked by counsel in defendant's behalf. Counsel argues that defendant is in the exercise of

official functions, *de facto*, and under color of law, *i. e.* under § 17, Ch. 62, Laws 1890, which provides that the county superintendent shall hold his office for a term of two years, "and until his successor shall have been elected and qualified." But the decided weight of authority is against the position of counsel upon this point. Merrill,. Mand. § 143, lays down the rule as follows: "So the writ will issue if the incumbents are only holding over until their successors are elected or qualified;" citing in note 5, *State* v. *Freeholders of Hudson Co.*, 35 N. J. Law, 269, and other cases. This precise question was elaborately discussed, and ruled against the defendant's contention, in *Supervisors* v. *O'Malley*, 46 Wis. 35, 50 N. W. 521, which case is very instructive, as it discusses many of the principles of law which apply with equal force to the case at bar. The authorities cited below from the States of Illinois and Minnesota are directly in point, also upon this feature of the case. In *Supervisors* v. *O'Malley*, the court uses this language: "And if a refusal to deliver the possession for a day or a week, or two weeks, constitutes him treasurer *de facto*, so as to compel the party declared elected to proceed by *quo warranto* to oust him before any action can be had to compel him to deliver the books and papers and money belonging to such office, then the whole effect and force of a certificate of election would be avoided, unless the person elected should commence proceedings immediately to recover such books, papers, or money." This reasoning applies to the case at bar, and it is so transparently clear and sound that we shall not suggest further considerations upon which the rule might be supported. We therefore hold that the court below did not err in denying defendant's motion to quash the alternative writ, and that the facts alleged in said writ, *i. e.* the facts of election, qualification, and demand, made out a *prima facie* case in favor of the relator.

Do the facts stated in the answer (which, for the purpose of raising a law question, are admitted in the demurrer,) viz. that at the commencement of the term of office in dispute the relator did not hold the educational certificate prescribed by the statute, or its

equivalent, constitute a bar to the relief sought by the relator? It does not appear from the record upon what grounds, or for what reasons, the trial court sustained the demurrer to the answer. The record is silent as to whether the court below decided the law question arising upon the demurrer upon its merits, or whether the court held that inasmuch as the question presented was one involving the ultimate title to the office, and did not touch the *prima facie* title of the relator, it could not be heard or determined in a mandamus case. Whatever the reason may be for the decision of the learned trial court, the question presented to this court is whether the order sustaining the demurrer was properly made. We think the order was properly made, and can be amply sustained upon the ground that the facts pleaded in the answer are not a defense in mandamus, as against the *prima facie* case made by the relator; but, on the contrary, such facts present the question of the relator's ultimate right to hold the office, which right, in cases like this, can only be heard and determined in one or the other of the modes provided by the statute for the trial and determination of questions appertaining to the ultimate title to a public office in this state. It is familiar history to the lawyer that from an early period the perogative writ of *quo warranto* issued in England, at the instance of the crown, to inquire into and determine a disputed title or right to an office. But before Sir William Blackstone wrote his Commentaries the writ was superseded by another proceeding, known at common law as "information in the nature of *quo warranto*," and whereby all questions were heard and determined which had been triable formerly by the writ of *quo warranto*. 2 Shars. Bl. Comm. Marg. p. 262, 263; Throop. Pub. Off. § § 87, 776, 777; Mechem, Pub. Off. § § 478, 483, 484. In this state the writ, and information in the nature of *quo warranto*, are abolished by statute, and the same enactment provides that "the remedies formerly attainable by the writ of * * * *quo warranto* may be obtained by civil actions." Comp. Laws, § § 5345, 5348 *et seq*. Another statute makes provision for the statutory contest in the District Court,

which contest is available to candidates or others desiring a judicial determination of a disputed right or title to a county office. Comp. Laws, § § 1489, 1501. See *Batterton* v. *Fuller*, (S. D.) 60 N. W. 1071. It appears, therefore, that, under statutory enactments existing in this state, ample provision is made for a trial of a disputed title to an office. A careful perusal of these statutes will also disclose the fact that none of them furnish a speedy remedy, or any remedy, whereby a claimant to an office can compel an incumbent to vacate possession, and surrender the books and papers to a claimant. The statutory remedies will determine the ultimate right or title to the office, but, despite the penalties in *quo warranto* actions, they are inadequate either to admit a successful litigant into an office, or to obtain possession of its insignitia or records. But, aside from the specific considerations to be hereafter advanced, it would seem that the title to an office ought not to be tried in a summary proceeding, like mandamus, in a state where ample provisions are made to determine such questions with greater deliberation in proceedings other than mandamus. It seems reasonable, also, to suppose that, inasmuch as possession cannot be obtained as a result of the litigation involving the title under either of the statutory modes prescribed for that purpose, mandamus—the ancient remedy—is still available for that purpose. In fact, it is elementary that the writ is the appropriate remedy, and, in the absence of express statutory authority, the only practicable remedy found in the law, to instate a claimant in office, and obtain the records and papers thereof. It is undoubtedly true that there is some conflict of judicial opinion upon the point, but the prevailing doctrine, established by a very decided weight of authority, is that mandamus will lie in favor of a candidate who has the certificate of election, and, pursuant thereto, has qualified, and demanded possession of the incumbent. Merrill, Mand. § 142, and cases cited in notes 5–7; High, Extr. Rem. § § 75, 76; Spel. Extr. Rel. § 1509; Mechem, Pub. Off. § 982, and note 3; 14 Am. & Eng. Enc. Law, p. 147, and cases cited in note 1. The point has been specifically ruled in *People* v.

*Kilduff,* 15 Ill. 502; *People* v. *Head,* 25 Ill. 325; *Crowell* v. *Lambert,* 10 Minn. 375, (Gil. 295;) *State* v. *Sherwood,* 15 Minn. 221 (Gil. 172;) *State* v. *Jaynes,* (Neb.) 26 N. W. 295. The authorities last cited are equally cogent in support of the corollary of the rule above stated, viz. that such *prima facie* title cannot be defeated in mandamus, by an incumbent who is merely holding over after the expiration of his term, by alleging facts which do not tend to defeat the *prima facie* rights of the relator, but do tend to show that the relator's title will be ultimately defeated if the state, at its election, shall institute a proper proceeding to oust the relator. *State* v. *Oates,* (Wis.) 57 N. W. 296; *State* v. *Board of Com'rs,* (Ind. Sup.) 25 N. E. 10. At common law, the writ of *quo warranto* to try title to office would issue only at the instance of the proper official representative of the government, and at his discretion; and this rule prevails in the United States, unless changed by statute. High, Extr. Rem. § 45, note 6; *Barnum* v. *Gilman,* 27 Minn. 466, 8 N. W. 375. The essence of the common law rule, in this feature, seems to be preserved in this state. The civil action which has superseded the writ of *quo warranto* in North Dakota is required to be brought by an official representative of the public, in the name of the state. Comp. Laws, § § 5348, 5349. Nor can a party not beneficially interested in the result be joined as a plaintiff with the state. Id. The rule that the temporary occupant holding over cannot become the champion of public interests, and thus defeat a relator in mandamus, having a *prima facie* right to the office, may, in our judgment, be rested upon other than narrow, technical grounds. From our standpoint, there are general and conservative considerations of public policy upon which the rule may be safely rested. It is common knowledge that the voters of this country do not, as a rule, exercise the right to vote until after a spirited public canvass is had, in which the qualifications of candidates—legal, constitutional, and otherwise—are thoroughly discussed and sifted. The result is that it very rarely happens that a candidate for office, who is legally or constitutionally disqualified to hold the same, is

elected by the voters. The general rule is, manifestly, that the candidate elected is not legally disqualified. After such election (and where a candidate receives an official certificate of election, which is based upon an official canvass of votes, and subsequently qualifies for the office in manner and form as the statute provides,) a very strong presumption arises that he is legally entitled to hold the office, and one sufficiently strong, we think, to entitle him to be admitted to office, as against an incumbent who has no other claim than the statutory right to hold the office until a successor is elected and qualified.

Defendant's counsel concedes that the *prima facie* title of the relator is strong enough to debar the defendant from pleading that the relator was not in fact elected, and admits that the certificate forecloses that question in this proceeding, but contends that other and independent disqualifying facts may be set up against the relator, including the fact of the nonpossession of the educational certificate. We think this contention is untenable, for reasons technical, and otherwise already indicated. The people very rarely elect to office an individual who is neither a minor, an alien, or a non-resident. The general rule, of course, is that the successful candidate possesses all of those qualifications, as well as all other legal and constitutional qualifications to hold the office to which he has been elected. We therefore conclude that the rule of practice we are discussing is salutory, and one which rests upon broad grounds of common sense and a wise public policy. See, also, *Driscoll* v. *Jones*, (S. D.) 44 N. W. 726; *State* v. *Churchill*, 15 Minn. 455 (Gil 369.) It is common ground with counsel in this case that under the prevailing rule of practice the ultimate title to an office will not be heard and determined by mandamus. This rule has the support of such a mass of authority that citations to support it are needless. Able courts, however, hold the contrary doctrine. Merrill, Mand., and cases cited in section 146. Practically, this minority rule seems to be applied, in effect, by the Supreme Court of New York, in *People* v. *Sheffield*, 47 Hun. 481. Counsel for defendant, however,

concedes that the prevailing rule is that title to office cannot be tried by mandamus, and contends that he does not desire to have the title determined here. His position seems to be that inasmuch as the ultimate title to the office is attacked by the defendant, and has become involved by reason of facts set out in defendant's answer, and admitted by the demurrer for the purposes of the case, it appears of record that the relator's title is involved, and consequently, as counsel contends, the relator should go out of court in this proceeding, and seek in another form—*i. e.* by a *quo warranto* action—to establish his claim of title. But the fallacy of this position is apparent for two reasons: *First.* As we have seen, the defendant, a private suitor, has no status which entitles him to become the champion of the state, and consequently, when he seeks to appear in that capacity, he is confronted by the rule which requires that in such a case the public must be represented by the proper official. Comp. Laws, § 5348. *Second.* The contention of counsel presents to our minds a case of logical contradictions, if not one of begging the question. Whether the fact pleaded in the answer, *i. e.* that the relator did not possess the prescribed educational certificate when the term of office in dispute commenced, or its equivalent, constitutes a bar to holding the office, is a question of law, presented by the demurrer. This question, and to determine which requires a trial, counsel insists should have been investigated by the trial court, and sufficiently determined at least to ascertain whether or not the question presented involved the title to the office, and, if it did, then counsel claims that the relator should, under the rule, be kept out of his office until the question so raised should be elsewhere tried and determined. In its final analysis, counsel's position appears to be that where the answer in mandamus presents facts which go to the ultimate title, but do not touch relator's *prima facie* title, the relator must be denied the writ, and hence be kept out of office until another proceeding has settled the question thus thrust upon the court by a private suitor. This reasoning leaves out of sight the rule that counsel

admits to be the prevailing one, viz. that title to an office cannot be tried by mandamus. Despite this concession, however, counsel vigorously contends that in this case—and, of course, all similar cases—the court must try and determine the question whether the facts set out in the answer do or do not involve the title. In our view, this investigation is inhibited by the rule which forbids a trial of title by mandamus. Counsel's contention certainly implies that a relator must go out of court if the title is put in question by the answer, even in cases where a good title in the relator may be established later in a *quo warranto* action. In our judgment, the better rule is that in cases like this nothing can be tried, except such questions as affect the *prima facie* title of the relator; but we desire to limit this rule to cases standing upon the same or similar facts. We are aware of the fact that in a certain class of cases the writ of mandamus cannot be successfully invoked by a relator holding the certificate of election, who has qualified under the statute, and demanded possession. To illustrate: If the votes cast for the relator in June, 1894, had been put in the ballot box at the general election held in November, 1894, and the relator had received a certificate and qualified as a result of the November election, and had demanded possession, he could not resort to mandamus with success. In the case supposed, the court would take judicial notice of facts showing that the election was void, and this fact would defeat the *prima facie* effect of the certificate. We cite two cases among many illustrating this rule: *State* v. *Dodson*, (Neb.) 31 N. W. 788; *State* v. *Board of Health of City of Trenton*, (N. J. Sup.) 8 Atl. 509.

Counsel cites *People* v. *Board of State Canvassers*, 129 N. Y. 360, 29 N. E. 345, and strenuously and very ably argues that it is authority in point in his favor. We do not concede that the case is squarely in point. True, it is a mandamus case, and involves an election; but the relator was not seeking the writ, either to be admitted into the office, or to secure the records of an office. Nor was there a respondent, in the case cited, who was holding over after the expiration of his term of office. In that case, therefore,

the court was not called upon to determine the rights of a successful candidate, who had received a certificate of election, and had qualified by taking the oath and giving the bond. No such question was presented to the court for solution, and no such question was discussed or determined, in that case. The court in that case did, however, refuse to award the writ to compel the state canvassers to discharge their purely ministerial functions and canvass the vote, because and upon the ground that it appeared of record that the relator—who was elected—was constitutionally ineligible to hold the office in question, viz. that of state senator, for the reason that the relator held another and an incompatible office. The ruling was put upon the ground that the writ does not issue to aid in accomplishing an illegal object, which is doubtless an elementary and well-settled doctrine. But we are of the opinion that the question of the eligibility of the relator was not involved, and that the question of his right to sit as a state senator was *coram non judice*, and could not have been constitutionally tried in that case, or by the courts of the state in any case; hence, we think that the court grossly erred when it assumed to sit in judgment upon the question of relator's eligibility, and also, after declaring him to be ineligible, erred in refusing the writ to compel the performance of a ministerial duty, which the court itself affirmed it was the clear statutory duty of the canvassers to perform, *i. e.* to canvass the votes. We regard the case as thoroughly unsound in principle. In our opinion, it proceeds upon false premises to a false and dangerous result. See High, Extr. Rem. § § 55, 56, 60, 61; Merrill, Mand. 139. We shall, however, refrain from a further discussion of the case, not only because we think it not much in point, but for the further reason that its value as a precedent has been minimized, if not wholly destroyed, by the very able and admirable dissenting opinion of Judge Finch, concurred in by Judge Andrews, and published with the majority opinion.

It will follow from the views we have expressed that the judgment of the trial court, ousting the defendant, was properly

entered, and should be affirmed, and this court will so order; and, deeming the case urgent, we shall further direct that the remittitur be transmitted forthwith to the trial court for further proceedings. All concur.