(86 N. W. Rep. *227*.)

---

STATE *ex rel* JACOB SUNDERALL *vs.* WILLIAM McKENZIE, *et al.*

Opinion filed May 11, 1901.

**Ministerial Duties of Canvassing Board.**

In this state the duties of county canvassing boards are ministerial, and not judicial.

**Vote Canvassed as Returned.**

The object and purpose of the canvass made by such board is to determine the result of the election as shown by the official returns of such election, and not to determine judicially who received the most votes in fact. In case the official returns do not truly recite the votes as cast, the remedy provided for those who are aggrieved is by contesting the election.

**"Tally List" Not Part of Returns.**

In canvassing the result of an election, such board is limited to a consideration of the official returns which are required by law to be sent in by the officers of the election precincts. These include the precinct poll books and the certified statements of the election made by the precinct officers, but do not include "tally lists."

**Official Statement of Votes Cast.**

It is *held* in this case that the county canvassing board properly refused to consider certain tally sheets or lists which were found in the poll books, for the purpose of varying the votes as shown to have been cast by the official statements of the election of such precincts, and that the District Court was in error in issuing a peremptory writ of mandamus compelling said board to do so.

Appeal from District Court, Walsh County; *Sauter,* J.

Application by the State, on the relation of Jacob Sonderall, for a writ of mandamus against William McKenzie and others. Judgment for plaintiff. Defendants appeal.

Reversed.

*Jeff M. Myers,* for appellant.

The board of election canvassers are ministerial officers whose duty it is to receive the returns from the precincts and declare results as shown by the face of the returns. 10 Enc. L. (2 Ed.) 746. And such canvassing board has no power to go beyond the returns. McCreary on Elections, § 81; Payne on Elections, § 603; *McCoy* v. *State,* 36 At. Rep. 81; *People* v. *Hilliard,* 29 Ill. 413; *Franklin Co.* v. *State,* 24 Fla. 55; *Moore* v. *Kissler,* 59 Ind. 152;

*People* v. *Circott,* 97 Am. Dec. 141; *Attorney General* v. *Board,* 31 N. W. Rep. 539; *McQuade* v. *Ferguson,* 51 N. W. Rep. 1071; *Taylor* v. *Taylor,* 10 Minn. 107; *State* v. *Canvassers,* 31 Pac. Rep. 536; *State* v. *Canvassers,* 31 Pac. Rep. 879; *State* v. *Tanzey,* 32 N. E. Rep. 750; *Smith* v. *Lawrence,* 2 S. D. 185, 49 N. W. Rep. 7; *Page* v. *Letcher,* 39 Pac. Rep. 499; *State* v. *Trimbell,* 41 Pac. Rep. 153; *State* v. *Canvassers,* 36 Wis. 498. Canvassing boards have neither judicial nor quasi-judicial, but solely ministerial powers. Section V Const. N. D. 85; § 547, Rev. Codes, 1899. It follows therefore unless the tally lists, whereon votes cast by the female voters were tallied, were a part of the returns to be sent to the county canvassing board, such board had no right to consider their contents. The tally list is not made a part of the poll book or returns. Sections 492, 495, 486, 487, 525, 256, Rev. Codes. And notwithstanding the tally list was forwarded by the local board as a part of the returns, it cannot in fact become a part of the legal returns. *Mayo* v. *Freeland,* 10 Mo. 392; *State* v. *Trigg,* 72 Mo. 365; *State* v. *Barstow,* 4 Wis. 567. The statute impliedly forbids the keeping of a separate tally list for women's votes. § 522 Rev. Codes. And when the separate tally sheet was kept and certified up it should have been rejected by the canvassing board. *Smith* v. *Lawrence,* 2 S. D. 185, 49 N. W. Rep. 7; *Dalton* v. *State,* 3 N. E. Rep. 695. Assuming that the tally list was properly a part of the returns then upon the record, whether the vote found in the women's tally list should or should not have been added to those included in certain of the statements, presented a problem for the judgment and determination of the canvassing board. Mandamus will not lie to interfere with the exercise of such judgment. § 6110, Rev. Codes; High on Extraordinary Remedies, § 42; *State* v. *Carey,* 2 N. D. 36, 49 N. W. Rep. 164; *Heintz* v. *Moulton,* 7 S. D. 272, 64 N. W. Rep. 135; *Commissioners* v. *Commissioners,* 24 O. St. 401; *Reddick* v. *People,* 82 Ill. App. 85; *People* v. *VanCleave,* 55 N. E. Rep. 698. Where the duties of the canvassing board are ministerial and they are not authorized to hear evidence, mandamus will not issue to compel them to count votes unless their legal duty so to do is unequivocal. *Clark* v. *Board,* 126 Mass. 282; *State* v. *Randall,* 35 O. St. 64; *State* v. *Higgin,* 76 Mo. App. 319; *Dent* v. *Board,* 32 S. E. Rep. 250. The evidence of the local election officers was erroneously received by the trial court. *Dalton* v. *State,* 3 N. E. Rep. 685.

*John H. Fraine,* for respondent.

The fact that a ministerial officer performed his duties according to his judgment, is of no avail if the duties are not correctly performed. *State* v. *Foster,* 38 O. St. 599. Tally lists, poll books and blanks for election returns are sent by the auditor to the election precincts. §§ 492, 495, Rev. Codes. The returns are made on these blanks and certified statement showing the number of votes cast for each person for each office. § 525, Rev. Codes. Such statement and

one of the poll lists are delivered to the county auditor, and by implication the certified statement becomes *prima facie* evidence of the facts recited. § 527, Rev. Codes. To canvass the returns means the same as to canvass the votes. *Bowler* v. *Eisenhood,* 1 S. D. 500; *Clark* v. *Tracy,* 64 N. W. Rep. 291; *People* v. *Sau Salito,* 104 Cal. 500; *Exparte Mackey,* 15 S. C. 332; *Hudson* v. *Solomon,* 19 Kan. 160; *State* v. *Marston,* 6 Kan. 524; *Russell* v. *State,* 11 Kan. 524. A return is merely the record or report of official proceedings had. The necessities of the case make it *prima facie* evidence, but unless expressly made so by statute it is never conclusive. *State* v. *Marston,* 6 Kan. 524; *Russell* v. *State,* 11 Kan. 308. Where it is evident from the returns that they do not disclose the correct state of affairs, it is the duty of the board to scrutinize, inquire and examine in order to ascertain correctly for whom the votes were cast, and the number of the same. For this purpose they may send for the ballots themselves. § 526, Rev. Codes. And from a count of the ballots determine the truth of the matter. As between the ballots themselves and the copies of the polls, the ballots are controlling. *Hudson* v. *Solomon,* 19 Kan. 180.

YOUNG, J. This is an appeal from a judgment rendered in mandamus proceedings by the District Court of Walsh county commanding the defendants and appellants, who constitute the county canvassing board of that county, and who as such were charged with the duty of canvassing the election returns in the year 1900, to canvass and count certain votes for the office of county superintendent, which it is alleged they omitted and refused to count in canvassing the returns for that office. The plaintiff, Sonderall, and one Ben Tronslin were opposing candidates for that office at the November, 1900, election. The canvass made by the board gave plaintiff, Sonderall, 2,159 votes, and Ben Tronslin 2,188 votes, or a majority for the latter of 29 votes. This canvass was made solely upon the certified statements of the election returned to the county auditor by the several election boards of the election precincts into which the county was divided, and it is not disputed that it correctly declared the result as shown by such certified statements. The plaintiff's claim is that as to 12 precincts these certified statements are false, and do not correctly represent either the total number of votes cast for the office of county superintendent or the correct vote of either of the candidates. It is claimed that in these 12 precincts there were, in all, 258 votes cast by women voters for the office of county superintendent, and that none of these votes were counted or included in the certified statements of the election returned to the county auditor by the precinct officers, which statements, as we have before seen, constituted the sole basis of the canvass made by the defendants. Plaintiff's further claim is that 161 of these votes were cast for him, and the remaining 97 for Tronslin, and that it was the duty of the board to add these excluded votes to those actually certified in the statements, and to declare the result as determined by such

addition. This, if done, would give plaintiff, 2,320 votes and Trons-lin 2,285, or a majority of 35 for the former. Plaintiff made demand upon the board that these votes be counted and included in their canvass, and for a certificate of election. The board refused, and these proceedings were instituted by plaintiff to compel a canvass which should include the votes alleged to have been illegally excluded. It is the contention of plaintiff's counsel that it was the legal duty of said board to canvass and count such votes as requested, for the reason that the fact that they were cast as alleged was made to appear officially by certain tally lists or tally sheets which were found in and attached to the poll books of the several precincts, and returned to the county auditor along with the statements of the election, all of which were before the canvassing board. It is claimed that these tally sheets constitute parts of the returns, and are proper documents to be considered in determining the result of the election. These tally sheets have printed in one column the names of all of the various candidates to be voted for at that election. On the right of the names appear check marks obviously made to show the number of votes cast for the persons opposite whose name they appear. The totals of such marks appear at the extreme right. To illustrate the difference between the result of the election as shown by the tally sheets and that shown by the certified statements in these 12 precincts, we need refer to the facts in only one of them. The rest are similar in every way, except as to the number of votes involved, and that number is undisputably the number we have before stated. We will take the precinct of Forest River township. Two poll book were delivered to the election officers of this precinct, and the same were returned to the county auditor after the election. One was the male poll book and the other for women voters. In the male poll book are listed in numerical order the names of 68 male voters; in the female poll book, the names of 18 female voters. The tally sheets or lists to which we have referred are in the poll books, and physically annexed thereto. The tally sheet in the male poll book for this precinct has 49 tallies after the name of Jacob Sonderall, and 16 after that of Tronslin. The female tally sheet has 13 tallies after plaintiff's name, and 4 after Tronslin's. On the basis of the tally sheets, plaintiff received 62 votes and Tronslin 20 votes in this precinct. We turn now to the "Statement of Election," which is a separate document executed by the precinct officers over their signatures, certifying to the result of their canvass of the ballots cast at this precinct as to every office or proposition voted upon. This document recites: That "there were sixty-five (65) votes cast for superintendent of schools, for which Jacob Sonderall had forty-nine (49) votes. Ben Tronslin had sixteen (16) votes. * * * That the foregoing is a correct statement of the total vote cast at said election for each and every office mentioned therein, and that the above named persons received the number of votes set opposite their respective names," etc.

Briefly stated, the question, and the sole question, in this case is whether the statements of election, or the tally sheets found in the poll books, govern the canvassing board in the performance of their duties. If the board could only consider the statements of election, then their canvass was both regular and correct, and the judgment of the District Court in this case was erroneous. If, on the other hand, the tally lists constituted a part of the returns, and were properly before the board as furnishing a basis for their canvass, then there was a legal duty resting upon the board to consider them. A solution of this question can only be reached by reference to certain provisions of the Revised Codes relative to elections. By § 527 the duty is laid upon the county canvassing board, after its organization, to open the returns and canvass the same and make abstracts of the votes. Section 547, among other things, provides that "all returns shall be received and the votes canvassed and a certificate given to the person who may by such returns have the greatest number of votes." It is entirely plain from the language of the sections just quoted that the duty enjoined by law upon said board was to canvass the returns, and to declare the result as determined by such canvass. What constitute the returns is the important question in this case. A reference to § 526 will show that the only documents which are authorized or required to be returned by the precinct officers are one copy of the official statement of the election and one copy of the poll book, together with the oaths of the inspectors and clerks, all properly sealed. Section 525 governs the method by which the canvass of ballots is made by precinct officers, and also provides for making the statement of the election to which reference has been made. It reads as follows: "The inspectors shall as soon as the count is completed publicly announce the result thereof, specifying the whole number of votes cast for each office and for each candidate respectively; also the number of votes cast for and against each proposition voted for at such election. They shall immediately prepare in duplicate a statement in writing setting forth at length, in words and figures, the whole number of votes cast for each office and the names of all the persons for whom such votes were cast, together with the number of votes cast for each person; also the number of votes cast for and against each proposition voted upon at such election which statement they shall certify to be correct." It accordingly appears that the precinct poll book and the statement is all that is required to be sent to the county auditor, barring all reference to the ballot boxes and keys, which are of no importance on the question we are here considering. Neither is there any duty laid upon the precinct election officers to make any official record of their proceedings in connection with the election elsewhere than in the poll books and in the statement of the election. There is no provision of law authorizing or requiring either the making or the return of a tally list, and an examination of the several sections which refer to poll books shows that it constitutes no part thereof. See § 495. This

section, after providing the form and contents of such poll books, provides that the county auditor shall prepare the same, and deliver two copies thereof to the sheriff for each precinct; that the sheriff shall deliver the same to the inspector, who shall on the day of election deliver them to the clerks. The only entries required to be made therein are those referred to in §§ 486 and 487, which require an entry of the oaths administered to the inspector, judges, and clerks, and the names, in numerical order, of all persons voting to be entered therein by the clerks. It is true, § 492 in defining the duties of the county auditor preliminary to the election, makes reference to a "tally sheet." This section provides that at the time of distributing the ballots he shall "cause to be delivered to the several inspectors, the necessary number of blank forms of poll books and also blanks for the election returns, with the proper captions, forms of oaths and forms of certificate and tally sheets necessary to carry out the provisions of this chapter." This is the only place in the entire election law where such a paper is referred to. In this state of the law, can it be said that the tally sheets under consideration, which found their way into the auditor's office, annexed to the poll books, constitute a part of the official returns? We are clear that they do not, and that, so far as the duties of the canvassing board are concerned, they cannot be considered. They are not required by law to be kept or returned, and are entirely unofficial. They are not certified to by any one as correct, and it is not known by whom they were made. The fact that the auditor is required to provide blank tally sheets does not make them parts of the returns. The documents constituting the returns are described elsewhere. The purpose in furnishing the tally sheets was, without doubt, merely to provide a convenient place for noting the votes, for the purpose of computation as they were canvassed. That canvass, as we have seen, is required to be made by the inspector and judges, and the result announced publicly, and then committed to the written statement of the election. This statement and the poll book are the only documents constituting the returns, and the canvass by the county canvassing board is plainly confined thereto. In this connection it may be proper to say that it was not the duty of the canvassing board to ascertain who was in fact elected to the office of county superintendent. Neither was it the duty of the District Court to investigate that question in these proceedings. On this point see the opinion of this Court in *State* v. *Callahan,* 4 N. D. 481, 61 N. W. 1025. The duty of the board was confined to an examination of the official returns and a canvass of the same, and a declaration of the result of such canvass. The board is required to act upon the official returns only, and not upon matters lying outside of them. If the returns are false,—and in this case it would seem they were, through the innocent mistake of the precinct officers in not including the women's vote in their official statement of the election, they could have been overturned by appropriate proceedings to contest the

election. But, until the *prima facie* character of the official returns is destroyed in proper judicial proceedings, they determine the result. In *People* v. *Board of Canvassers of Chemung Co.,* 126 N. Y. 392, 27 N. E. 792, a question arose as to whether the record of votes as contained in the statement proper, such as we have, or the written record on the ballots required by the laws of that state to be attached to such statement, should control in the canvass. The board canvassed the votes as shown by the writing on the ballots attached. The Court of appeals held that this was improper, and that the board was confined to the record contained in the statement, and could not go outside of it. In the course of its opinion the Court, speaking through O'Brien, J., said: "The question is whether the board of county canvassers, in thus canvassing and certifying the vote, performed the duty imposed upon them by law. It was not their duty to ascertain which of the candidates was in fact elected, not even which of them in fact received the greatest number of votes in the Sixth district, but simply to determine from the documentary evidence before them, furnished by the action of the inspectors, and upon which alone they could act, the number of votes given for each candidate, respectively, for representative in congress. This document from which the canvassers are required, in a ministerial capacity, to estimate and certify the vote, is called in the statute a 'statement'; and this controversy arises from what appears to be an honest difference of opinion between the learned counsel who have presented the case as to the true scope and meaning of that word. On the one hand it is argued that, when there is a conflict between the writing on the attached ballots and that inserted in the body of the paper, the board, in canvassing the vote is bound by the latter, while, on the other hand, it is insisted that the attached ballots and the writing thereon are a part of the statement, and it is within the power of the board to estimate and certify the true vote from them. The question thus becomes one purely of construction. * * * An intelligent and consistent administration of our statutes relating to the canvass of the vote by county canvassers requires that when there is conflict in this respect they shall be bound by some rule that is reasonable and certain, and not subject to variation according to the discretion of each board. In my opinion, the writing in the body of the certificate expressing the result of the count by the inspectors at the close of the polls, and publicly announced by them and certified under their official certificates to be correct, must prevail over any contrary result that can be obtained from the writing on the ballots. The words written into the paper by the inspectors must be deemed to express the actual and correct result of their count. They are precise and certain, and to the effect that a certain number of votes were given for a person therein named for a designated office." In the above case it will be noticed that the writing on the ballots was authorized unofficial by law to be made, and was a part of the return. Never-

theless it was held not admissible to contradict the statement. The present case is far stronger, for, as we have seen, the tally sheets are entirely unofficial writings. The general rule is that the board of canvassing officers are ministerial officers only, whose duty is to receive the returns from the various precincts, and declare the results as shown by the face of the returns. Some states have given them limited judicial powers. See 10 Am. & Eng. Enc. Law, 746, and authorities collated. No such power has been given in this state, and their duties are entirely ministerial. As to this, counsel agree.

Counsel for plaintiff calls attention to that portion of § 526 which relates to the custody of the ballot boxes. Said section requires the inspectors to retain the ballot boxes in safe custody for a period of 60 days next after the election, and further requires that it shall be the duty of such inspectors to cause the same to be safely delivered to the county auditor, upon the written notice of the board of canvassers, at any time during said period. It is urged that the above provision contemplates a scrutiny and canvass of the ballots themselves by the board when necessary to ascertain the true number of votes cast for each candidate. It is true, the purpose of authorizing the board to have the ballot boxes brought in is not entirely clear, but, so far as it can be ascertained, it is merely to provide an additional safeguard for their custody in case of probable contests, by removing them from the custody of the inspectors to the safer custody of the county auditor, where they can be more safely guarded, and the character of the ballots contained therein thus be preserved as the best evidence of the vote actually cast. No authority is given to the board to open the box and canvass the ballots, and no such power can be inferred from the mere existence of the right to have the boxes sent to the auditor. The present case furnishes an instance where it would have been proper for the board to order the ballot boxes of the 12 precincts in question into the custody of the auditor, to safeguard plaintiff's rights in case he should desire to challenge the result of the canvass of the official returns by a contest and appeal to the ballots for proof of his claims.

In his brief, counsel for respondent states that "the issue before this Court at this time is whether or not a candidate for public office shall receive all the votes cast for him, or whether he should be deprived of some votes, and perhaps his election, as in this case, by reason of the negligence, fraud, ignorance or inadvertence of local election boards," and states that his right to the remedy by mandamus is based upon this general principle,—that it is the general purpose of the law "that the will of the people, as manifested by the votes, should be obeyed." As to the issue involved, counsel is mistaken. The issue, and the only issue, is as to the duty of the canvassing board in relation to the canvass. Was it their duty to act entirely upon the official returns, or could they go outside of them, and declare a result determined by a resort to other evidence? We have seen they could not. It is true, the purpose of the entire election

law is, as stated by counsel, to carry into effect the actual votes cast; and to this end various safeguards are thrown about the conduct of elections, and almost every avenue of fraud and mistake is closed by suitable provisions. One of these is that the votes shall be publicly canvassed by the precinct officers, the result of the vote for each person voted for publicly announced, and such result embodied in a written statement signed by such officers, showing in words and figures the number of votes cast for each candidate. This statement is the highest evidence of the precinct canvass, and constitutes the sole evidence upon which the county canvassing board is required to act. But the returns of the precinct officers, while conclusive upon the county canvassing board, are not conclusive upon parties interested. The ballots themselves, if properly preserved, may be appealed to to impeach the official returns and to establish the true vote. But this appeal is not to election officers, charged only with ministerial duties, but to the District Court, which is expressly clothed with complete authority to determine such contests. The remedy provided for challenging the result of an election, which is claimed to be incorrectly determined by the election officers, is by a contest instituted in the District Court under the provision of § 563 and succeeding sections. That remedy is ample, and this Court, while regretting the apparent hardship of this particular case, declines by judicial fiat to confer upon canvassing boards a power which the legislature has not given. For the reasons stated, the District Court was in error in directing the board to canvass and count the votes upon the tally sheets, and its judgment is therefore reversed. All concur.