[File No. 6329.]

STATE OF NORTH DAKOTA EX REL. P. O. SATHRE, Attorney General, Appellant, v. ROBERT BYRNE, Secretary of State, Berta E. Baker, State Auditor, Alfred.S. Dale, State Treasurer, P. O. Sathre, Attorney General, Arthur E. Thompson, Superintendent of Public Instruction; Constituting the State Board of Canvassers of the State of North Dakota and Thomas H. Moodie, Respondents.

(258 N. W. 121.)

Opinion filed December 27, 1934.

*P. O. Sathre,* Attorney General, *Francis Murphy,* Special Assistant Attorney General (*Alvin C. Strutz,* of counsel), for appellant.

*C. Liebert Crum, M. W. Murphy, C. J. Murphy, John Moses, John F. Sullivan, M. A. Hildreth,* and *W. D. Lynch,* for respondents.

PER CURIAM. This is an action brought by the Attorney General on the relation of the State to enjoin the state board of canvassers from canvassing the votes cast for the office of Governor of the state of North Dakota at the general election held November 6, 1934; from finding and

determining that one Thomas H. Moodie received the highest number of votes cast for the office of Governor at such election; from finding and determining and certifying that said Thomas H. Moodie was duly elected to such office; and to enjoin the defendant Robert Byrne as secretary of state from issuing a certificate of election to the said Thomas H. Moodie. An order was issued citing the defendants to show cause why a temporary injunction should not be issued during the pendency of the action, and by provisions in such order to show cause why the defendants were restrained from performing any of the acts sought to be enjoined until the further order of the court. Thereafter the trial court modified the restraining order so as to exclude from the provisions thereof the members of the state board of canvassers; but the restraining order was maintained in force in so far as it restrained the defendant Byrne as secretary of state from issuing a certificate of election.

The action is based upon the sole ground that the said Thomas H. Moodie was not and is not eligible to the office of Governor because, it is alleged, he had not resided within the state of North Dakota five years next preceding the election as required by § 73 of the Constitution.

The complaint contains no statement as to the number of votes received by the different candidates for Governor at the last general election; but from the allegations therein it is apparent that said Moodie received a greater number of votes than any other candidate for the office of Governor and that under the existing laws it will become the duty of the said board of canvassers to find that said Moodie has received a greater number of votes for the office of Governor than any other candidate for said office at said general election, and that consequently he is elected to such office. It is alleged in the complaint that "the state board of canvassers are about to meet as such board and to canvass such votes and to determine and certify that the said Thomas H. Moodie received the highest number of legal votes cast therein for said office of governor and that the said Thomas H. Moodie was thereby duly elected to such office and that the defendant Robert Byrne as secretary of state, pursuant thereto, is about to and will issue to the said Thomas H. Moodie a certificate of election to such office and that they and each of them will so do and proceed unless enjoined and restrained by this Court from so doing."

The defendant Moodie demurred to the complaint on the ground, among others, that the complaint failed to state facts sufficient to constitute a cause of action; that the action is an attempt to try title to office in a collateral proceeding; and that under the facts shown in the complaint the court has no jurisdiction of the subject matter. The defendant Moodie also filed a return and an affidavit in which he denied, the alleged disqualification. The defendant secretary of state filed a return wherein he alleged that "it is his duty to issue a certificate of election to the candidate for Governor that the said canvassing board has certified to him as having received the highest number of votes." In his return the secretary of state further alleges that the canvassing board, pursuant to law, has certified and found that at the last general election there were three candidates for the office of Governor of the state of North Dakota, namely: Thomas H. Moodie, Lydia Langer, and P. J. Barrett, and that said canvassing board has certified pursuant to law that the said three candidates respectively received votes as follows for the office of Governor at said election, viz.: Thomas H. Moodie, 145,333 votes; Lydia Langer, 127,954 votes; and P. J. Barrett, 1,132 votes; and that consequently it is "the plain and legal duty" of the defendant as secretary of state to issue a certificate of election to the said Thomas H. Moodie certifying that he has been elected to the office of Governor of the state of North Dakota.

After hearing the trial court made an order denying the application for a temporary injunction and vacating the restraining order theretofore issued. The plaintiff has appealed from such order.

Plaintiff's cause of action is predicated upon the theory that the defendants are about to act illegally and that unless restrained by judgment of the court they will proceed to perform certain wrongful and illegal acts, namely, to find that the defendant Moodie at the last general election received a greater number of votes for the office of governor than any other candidate for that office and that they will make a certificate to that effect, and that the defendant secretary of state unless restrained from so doing will issue a certificate of election to said Moodie in accordance with the findings and certificate of the state board of canvassers. (As has been said the restraining order was modified and the state board of canvassers did canvass the votes and make its findings and certify to the same, and the restraining order remains in

force only in so far as it restrains the secretary of state from issuing a certificate of election.)

Clearly, the plaintiff cannot prevail. The defendants state board of canvassers and secretary of state were not seeking, or threatening, to perform any illegal act. Their sole purpose, as disclosed from the entire record, including the allegations in plaintiff's complaint, was and is to perform the duty enjoined upon them by law and which their oaths of office required them to perform. North Dakota, in common with other states in the Union, has provided machinery for conducting elections and ascertaining the result thereof. Our laws provide for the canvass of votes cast at an election by canvassing boards established in the several counties. They also provide that an abstract of votes cast at an election shall be certified from the several counties. A state board of canvassers has been established to canvass votes and ascertain the result of an election. The board consists of the secretary of state, state auditor, state treasurer, attorney general and superintendent of public instruction. Comp. Laws 1913, § 1011.

It is provided that for the purpose of canvassing and ascertaining the result of a general election the state board of canvassers shall meet at the office of the secretary of state on the first Tuesday in December next after the general election. Comp. Laws 1913, § 1015 (as amended by chapter 51, § 2, Sess. Laws 1915). It is made the duty of the board to examine the certified statements of the county canvassers, and, in the event it appears that a material mistake has been made in the computation of votes given for any person or that the county canvassers in any county have omitted to canvass the votes or any part thereof cast in any precinct in their county, provision is made for correction of such mistake. Comp. Laws 1913, § 1016. It is provided that upon the certified statements and returns received the state canvassing board "shall proceed publicly to examine and make a statement of the whole number of votes given at any such election for each and all state officers." Comp. Laws 1913, § 1018. Also that the state canvassing board "shall certify such statements to be correct and subscribe their names thereto and they shall thereupon determine what persons have been by the greatest number of votes duly elected to such offices, or either of them, and shall make out and subscribe on each

statement a certificate of such determination and deliver the same to the secretary of state." Comp. Laws 1913, § 1019.

It is further provided: "The secretary of state shall record in his office each certified statement and determination so made by said board, and shall forthwith make out and transmit to each of the persons thereby declared to be elected a certificate of election as hereinafter provided and he shall also forthwith cause a copy of such certified statement and determination to be published in a newspaper printed at the seat of government." Comp. Laws 1913, § 1020.

The powers and duties of the state canvassing board are thus specifically delineated by statute. Not only are the powers and duties so delineated, but the documents to be examined by the canvassing board and on which their findings must be based are specifically named. In short, it is made the duty of the state canvassing board to ascertain the results of an election from the statements or abstracts certified to the secretary of state by the various county canvassing boards and it is only where it is apparent that "any material mistake has been made in the computation of votes given for any person, or that the county canvassers in any county have omitted to canvass the votes, or any part thereof, cast in any precinct in their county" that the state canvassing board has any duty to perform other than to compute the total number of votes cast for the several candidates for the respective offices as disclosed by the abstracts from the several counties. But even when such mistake appears the state canvassing board is not authorized to conduct an investigation of its own. It must proceed to obtain the supplemental facts through the same source that the former certified statement from the county was furnished. The statute provides that "if it shall appear that any material mistake has been made in the computation of votes given for any person, or that the county canvassers in any county have omitted to canvass the votes, or any part thereof, cast in any precinct in their county, the board may dispatch a messenger to the county auditor of such county at the expense of such county with its requirement in writing to him to certify the facts concerning such mistake and the reason why such votes were not canvassed; and the county auditor to whom any such requirement is delivered shall forthwith make a true and full answer thereto under

his hand and official seal, and deliver the same to such messenger who shall deliver the same with all convenient dispatch to the secretary of state." Comp. Laws 1913, § 1016. Hence (so far as concerns the election of public officers) the duties of the state canvassing board are to compute, that is, to add up the votes received by the several candidates for public office as shown by the certified returns from the several counties where such returns are regular and correct on their face, -and to ascertain from such returns the total vote cast for the several candidates at the election, and to declare and certify the result thereof as thus ascertained. State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231; Smith v. Lawrence, 2 S. D. 185, 49 N. W. 7; Lansdon v. State Bd. of Canvassers, 18 Idaho, 598, 602, 111 P. 133; 20 C. J. 200. Aside from the quasi judicial power to determine the genuineness of the election returns before them, and, in case of apparent mistake in the returns from any county, to take the necessary steps to have such mistakes corrected, the functions and duties of the members of the State Board of Canvassers are purely ministerial. 20 C. J. 200. See also State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231, supra. The state board of canvassers has no authority to determine any question concerning the legality of an election or to pass upon the eligibility of a candidate for office. 20 C. J. 201. Such matters are wholly beyond the power of the state board of canvassers and are questions for determination in some appropriate proceeding in a judicial tribunal.

In this action it is sought to enjoin the defendants from performing the acts which it is their clear and unquestioned duty to perform, and the nonperformance of which would itself constitute a breach of official duty. Not only is it beyond the power of the state board of canvassers to refuse to declare the result of an election conformable to the provisions of our statute, but, under our laws, the result of an election as shown by the returns from the several counties as compiled, computed, and declared by the state canvassing board does not only show the prima facie result of the election as regards the number of·votes cast for the respective candidates; but the result of the election as thus found and certified is also presumptively correct so far as the actual and legal results·are concerned and clothes a person who

is thus found to have received the highest number of votes with prima facie title to the office not only as against the candidates at such election but as against the then incumbent of the office. State ex rel. Butler v. Callahan, 4 N. D. 481, 61 N. W. 1025.

It is well settled that a certificate of election, and qualification thereunder, clothes the person to whom the certificate is issued with prima facie title to the office and entitles such person to possession of the office and to exercise the functions thereof, even though the title to the office is assailed. McCrary, Elections, 4th ed. §§ 302, et seq.; State ex rel. Butler v. Callahan, 4 N. D. 481, 61 N. W. 1025, supra; State ex rel. Langer v. McDonald, 41 N. D. 389, 170 N. W. 873. Such prima facie title may not be attacked collaterally by any one; it can be assailed only by direct attack in an appropriate judicial proceeding. Thus, it may not be assailed by mandamus (State ex rel. Butler v. Callahan, 4 N. D. 481, 61 N. W. 1025, supra; State ex rel. Langer v. McDonald, 41 N. D. 389, 170 N. W. 873, supra); or by an action to enjoin the holder of the certificate of election from entering upon the discharge of his official duties. State ex rel. Coffey v. McFarland, 57 N. D. 708, 223 N. W. 931.

"Upon all questions arising collaterally a certificate of election is conclusively presumed to be correct; and hence it must stand until set aside by a competent tribunal in a proceeding in which its validity is directly attacked." 20 C. J. p. 251, § 348.

In harmony with these principles the courts have held (practically unanimously) that election officers may not be restrained from canvassing the vote and declaring the result of an election even though it be alleged that there was fraud and illegality in the election. 32 C. J. pp. 256, 257. Nor will election officers be enjoined from giving a certificate of election to the successful candidate, even though it be charged that such candidate is ineligible. "The right to hold office cannot be tried in a suit to enjoin certification of an election, the remedy being by quo warranto," or by a contest, where the statutes provide the latter remedy. 32 C. J. p. 257; State ex rel. Coffey v. McFarland, supra; 2 High, Inj. 4th ed. §§ 1312, 1313.

We are all agreed that plaintiff's complaint fails to state facts sufficient to constitute a cause of action; that the trial court properly va-

cated the restraining order and denied plaintiff's application for a temporary injunction.

Order affirmed.

BURR, Ch. J., and CHRISTIANSON, BURKE, NUESSLE and MOELLRING, JJ., concur.