THOMAS M. CUNNINGHAM *v.* ALFRED K. KUMALAE, CLERK OF THE COUNTY OF HAWAII.

No. 2387.

MANUEL C. DE MELLO *v.* ALFRED K. KUMALAE, CLERK OF THE COUNTY OF HAWAII.

No. 2388.

Argued October 25, 1938.     Decided February 1, 1939.

Peters and Kemp, JJ., and Circuit Judge Matthewman in Place of Coke, C. J., Absent.

OPINION OF THE COURT BY PETERS, J.

Separate proceedings in mandamus were brought by petitioners to compel the county clerk of Hawaii county to place their names on the county ballot of the general election for county offices to be held in the County of Hawaii on November 8, 1938. The alternative writs are the same in both cases with the exception of the number of precincts involved in alleged irregularities. Pursuant to stipulations of the parties, the cases were consolidated in the lower court and in this court.

The primary election of candidates for office at the general election had been held on October 1 previous. The petitioner Cunningham was a nonpartisan candidate at the primary for nomination to the office of supervisor at large of Hawaii county; the petitioner De Mello was a nonpartisan candidate at the same primary for nomination to the office of supervisor of Hawaii county from the second representative district. There were two candidates for nomination to the office of supervisor at large and six to the office of supervisor from the second representative district. But one supervisor at large was to be nominated and three supervisors were to be nominated from the second representative district. The county clerk certified that Cunningham's opponent had received the votes of a majority of the registered voters voting in the district in which he was a candidate and issued to him a certificate of election as supervisor at large of Hawaii county; he also certified that three of De Mello's opponents had received the votes of a majority of the registered voters voting in the district in which they were candidates and issued to them certificates of election to the office of supervisor of Hawaii county from the second representative district.

The petitioners, by the alternative writs, sought to impeach the certificate of the county clerk of the result of the election and the certificates of election issued by him upon the grounds specifically, (a) that the boards of inspectors of certain precincts involved had wholly failed to return to the county clerk the totals of votes cast or totals of ballots spoiled in their respective precincts on their official returns of results; (b) that the ballot bags of certain precincts involved were not sealed as required by law when received by the county clerk and it could not therefore be ascertained from the condition of the bags whether the ballots therein contained were the veritable ballots cast in the precincts and the official returns of results from the precincts could not be verified, the condition of the bags making it impossible to verify the tally of total votes of registered voters cast in the precincts; (c) that the boards of inspectors of certain precincts involved had failed to certify in their respective rosters of voters to the number of electors who failed to vote, the number of electors assisted and the number of applicants registered so that their official returns were not subject to verification; and (d) that boards of inspectors of certain precincts involved had wholly failed to certify to the rosters of voters and their official returns were not therefore capable of verification and generally that by reason of the irregularities detailed, it was impossible for the county clerk to ascertain from the official returns received by him the total of votes of registered voters cast at the primary election or the percentages of votes cast for any candidate, particularly those of the petitioners, unless the candidates received more than fifty per cent of the number of registered voters at the primary election. No fraud on the part of any board of inspectors or on the part of the county clerk was alleged. It was the claim of the petitioners that the duties of the respondent were purely ministerial; that the official returns of the

election, upon which the respondent certified to the outright election of the petitioners' opponents and upon which he had refused to place the names of the petitioners on the ballots for the general election, were incomplete, inadequate, unlawful and wholly insufficient to enable him as county clerk to certify to the results of the primary election; that the county clerk in so certifying had attempted to perform judicial functions in determining the total of votes of registered voters cast at the primary election; and that hence his certificates were null and void.

Demurrers to alternative writs were overruled and the cases proceeded to the merits resulting in the writs being made peremptory. The county clerk appealed. Upon the record on appeal being docketed in this court, due to the imminence of the general election the rules of court pertaining to the filing of briefs were waived, the cases set for immediate hearing and upon submission, we announced our conclusion in the form of a court order reversing the orders appealed from and remanding the cause with instructions to forthwith reverse, vacate and set aside the orders for the issuance of the peremptory writs to quash the same and to dismiss the petitions. It remains to express the reasons for our conclusion.

In our opinion the alternative writs failed to set forth facts sufficient to entitle petitioners to the relief prayed for the reasons: (a) None of the irregularities complained of, with the exception of the omissions from official returns of boards of inspectors of a return of the number of votes cast, were involved in the performance by the county clerk of his statutory duty to prepare a certified statement of the result of the primary as to candidates for the various county offices, and, in the absence of fraud, were mere irregularities and did not vitiate the election; and (b) that, in the absence of allegations to the contrary, there were in the possession of and accessible to the county clerk official

records of the primary to which he might resort and supplement the omissions in the returns as to the numbers of votes cast.

The primary law is not complete in itself. It does not pretend to set up the complete machinery for the holding of a primary election. It depends in part upon the provisions of the county Act pertaining to county elections and to the extent that the latter is incomplete upon the territorial general election laws. By the provisions of section 7747 of the primary law it is provided that "the laws relating to election. shall apply to all primaries" in so far as they shall be consistent with the primary law. And the section referred to expressly declares that in so providing the legislature intended to place the primary under the regulation and protection of the election laws as far as possible consistent with the provisions of the primary law. The laws relating to county elections are sections 2817 to 2825, R. L. 1935, both inclusive; those pertaining to elections generally are sections 7640 to 7715, both inclusive. Section 2817 of the county election laws makes the general election laws applicable to county elections except as provided in the county election laws.

The county election laws were passed subsequent to the enactment of the general election laws. Both the general election laws and the county election laws were in existence at the time of the passage of the primary election laws. In construing the provisions of the primary law, we proceed upon the premise that, under the provisions of section 7747 and section 2817, as between the provisions of sections 2817 to 2825, both inclusive, pertaining to county elections on the one hand and sections 7640 to 7715, both inclusive, pertaining to elections generally on the other, where any inconsistency occurs the former control and that neither the provisions of law pertaining to county elections nor those pertaining to general elections apply in

so far as they may be inconsistent with the primary law.

Section 7734 included in the primary law provides as follows: "Immediately upon the closing of the polls at the primary the inspectors shall count the votes cast, in the same manner as provided by law for the counting of votes at an election. The inspectors shall, on separate sheets or blanks to be provided for that purpose, make full and accurate returns of the votes cast and shall forthwith send one copy thereof to the secretary of the Territory and to the county clerk where the primary is held and one copy to the chairmen of the territorial central and county committees of each party." No claim was made that any return involved did not comply with the provisions of section 7734 to the extent of not containing full and accurate returns of the votes cast for each candidate. What form the separate sheets or blanks took with which the inspectors of election had been provided for the purpose of making their returns does not appear.

Paragraph 2, section 7735, provides as follows: "As soon as may be after the count at the primary the county clerk shall prepare a certified statement of the result of the primary as to candidates for the various offices and shall send a copy thereof to the territorial central and county committees of each party."

Section 7720 of the primary law concludes with the following paragraph: "This chapter shall be liberally construed so that the real will of the electors may not be defeated by any informality or failure to comply with the provisions of law in respect to the giving of any notice, or the conducting of any primary, or the certifying of the results thereof."

The gravamen of these proceedings is that the official returns of the election, upon which the county clerk certified to the outright election of petitioners' opponents and upon which he had refused to place their names on the

ballots for the general election, were incomplete, inadequate, unlawful and wholly insufficient to enable him as county clerk to certify to the results of the primary election and that the county clerk in so certifying had attempted to perform judicial functions in determining the total votes of registered voters cast at the primary election. The irregularities and omissions complained of must therefore be considered from the standpoint of the statutory duty of the county clerk to certify to the results of the election. If not involved in the performance by the county clerk of that duty, they affect the election generally and, in the absence of fraud, are mere irregularities and do not vitiate the election.

That portion of paragraph 1, section 7735, with which we are concerned, provides as follows: "The person receiving the greatest number of votes at a primary as a candidate of a party for an office shall be the candidate of the party at the following election, and any nonpartisan candidate receiving at least twenty per centum of the votes of registered voters cast at such primary shall also be a candidate at the following election; *provided,* however, that any candidate receiving the votes of a majority of the registered voters voting of the district in which he is a candidate shall be thereby duly and legally elected to the office for which he is a candidate at such primary."

The only data necessary or material to the preparation by the county clerk of the statement of the result of the primary election was that upon which the results of the election depended, namely, the number of votes received by each person as a candidate of a party for an office; in the case of a nonpartisan candidate the number of votes of registered voters cast; and the number of votes constituting a majority of the registered voters voting of the district in which a person was a candidate. None of the irregularities or omissions complained of, with the exception of the omis-

sion from official returns of boards of inspectors of a return of the number of votes cast, were involved in the performance by the county clerk of his statutory duty to prepare a certified statement of the result of the primary as to candidates for the various county offices. The failure of boards of inspectors to include in their rosters the number of electors who failed to vote, the number of electors assisted and the number of applicants registered could not possibly affect the determination of the result of the election. None of the information omitted was necessary to such determination. The number of electors who voted, not those who failed to vote, was a determining factor. Whether an elector voted unassisted or was assisted neither increased nor diminished the number of votes cast. Information upon the number of applicants registered was of similar import. These were all matters of detail that did not affect the result. Similarly in respect to the alleged failure of the inspectors to include in their returns the totals of ballots spoiled and to certify to their rosters. A return of the number of ballots spoiled was unnecessary to the performance by the county clerk of his statutory duty. The absence of certification by the board of inspectors could not possibly affect the performance by the county clerk of his statutory duty unless it further appeared that the roster could not be otherwise identified. Absence of certification does not foreclose identification by other means. Nor is a roster itself the only means of ascertaining the information to which it refers.

In the same category is the unsealed condition of certain bags containing election records received by the county clerk which, according to the allegations of the alternative writs, prevented the county clerk from verifying the ballots. There is no allegation that the contents of the bags were tampered with or any of their contents removed. Apparently the records were intact and were in no different

condition than if received with the seal intact. The contents of the unsealed bags, in the absence of allegations to the contrary, possessed the same means of identification as the contents of a sealed bag. It is inconceivable how this circumstance could affect the ability of the county clerk to use the official returns contained in the bags. Moreover the verity of the ballots was not in question.

From the allegations of the alternative writs the petitioners apparently were able to identify the precincts from which the unsealed bags emanated. A legitimate inference is that the county clerk could do likewise. Where, as here, no fraud is alleged and no claim is made that the returns are incorrect, there was no occasion, even if the county clerk possessed that power, to verify the tally of total votes of registered voters cast in the precincts.

Thus far we have assumed that the delinquencies of which the boards of inspectors were allegedly guilty resulted from their failure to observe or perform positive duties imposed upon them by law. Whether this assumption is warranted by the provisions of the election laws, we deem unnecessary to decide. Assuming, but not deciding, that to the extent and in the particulars alleged the boards of inspectors failed to observe and perform positive duties imposed upon them by law where, as here, the election laws provide that they shall be liberally construed so that the real will of the electors may not be defeated by any informality or failure to comply with the provisions of law in the conduct of a primary election, in the absence of fraud, the statutory duties violated will be considered directory and their nonobservance or nonperformance mere irregularities not in any way affecting the legality of the election. (McCrary, Elections [4th ed.], pp. 183, 184; *Howard* v. *Shields,* 16 Ohio St. 184, 191; *Jones* v. *State,* 153 Ind. 440; *State Ex Rel. Doyle* v. *Superior Court,* 138 Wash.

488, 244 Pac. 702; *Hooker* v. *Foster,* 19 S. W. [2d] [Tex. Civ. App.] 911.)

Finally as to the alleged failure of election inspectors to include in their returns the number of votes of registered voters cast. Construing paragraph 2 of section 7735 in the light of the purposes of election returns, the provisions of law determining the results of the election and the necessity of an official determination of the result of application of the law to the arithmetical results obtained, the conclusion is inevitable that the statute in the use of the words "full and accurate returns of the votes cast" includes a return of the number of votes of registered voters cast at the primary in the precinct to which the returns refer. A return merely of the votes cast for the several candidates would not necessarily disclose the total number of votes cast. And the number of votes cast in each precinct is necessary to permit a county clerk to determine whether a nonpartisan candidate received at least twenty per centum of the votes of registered voters cast and to determine whether any candidate has received the votes of a majority of the registered voters voting in the district in which he was a candidate. The omission to return the number of votes cast was one, however, that could have been supplied by the inspectors of election upon request of the county clerk. This being so, we see no reason why the county clerk in the absence from returns of the information required could not resort to other official records in his possession or to which he had access to supply the necessary material. In so doing, the return would be supplemented from the same source to which the inspectors themselves would have resorted had a request been made of them by the county clerk for the omitted data. Reference by the county clerk to other official sources of information is not to impeach but to supplement the returns. At the conclusion of the primary election, under the primary law, as amplified by the county

election laws and the general election laws, there were in the possession of or available to the county clerk the following official county records of each precinct in the county: 1. A list of registered voters of the precinct, hereinafter also referred to as the "register of voters," prepared by the county clerk pursuant to section 7655 and sent by him to the inspectors of election of the precinct pursuant to sections 7655 and 7731, upon which had been checked off by the inspectors, pursuant to paragraph 5, section 7667, the name of each voter polling a vote and transmitted by the inspectors to the county clerk personally, pursuant to paragraph 12, section 7667, and section 7704; 2. A copy of the returns of the votes cast made by the inspectors upon separate sheets or blanks provided for that purpose and sent by them to the county clerk pursuant to the provisions of section 7734; 3. All precinct ballots, lists and records concerning the primary election of county nominees transmitted by the inspectors to the county clerk pursuant to section 2820, including: (a) the original returns of the inspectors of votes cast, a copy of which had been sent to the county clerk pursuant to section 7734; (b) all blank ballots, whether used or not, and all printed ballots used, spoiled ballots cancelled pursuant to section 7694 and ballots rejected pursuant to section 7700; (c) the name of each voter polling a vote in the precinct recorded by the board of inspectors pursuant to paragraph 5, section 7667, referred to generally as the "roster"; (d) a list showing the names of all electors on the list of voters failing to vote prepared by the inspectors pursuant to paragraph 12, section 7667; and (e) all other records pertaining to the primary.

The correctness of the official records of the primary election other than those referred to in the alternative writs has not been challenged. The presumption of regularity is sufficient upon which to predicate the conclusion that as to them they were in due and regular form. More-

over under the provisions of section 7707 every record made in pursuance of law by the board of inspectors of the election is *prima facie* evidence of the facts therein set forth. From the contents of the official records of the primary in the possession of or available to the county clerk, other and in addition to those subject to attack, it is apparent that to the extent that any copy of the returns of election was deficient, by reason of the failure of the inclusion therein of the number of votes of registered voters cast in the precinct to which they refer, that deficiency could have been supplied from three different sources, first, from the list of registered voters of the precinct checked off by the inspectors, second, from the roster and third, from the original return which, under the presumption of regularity, included what the copy sent to the county clerk lacked. The presumption is that the original return which the inspectors retained and later sent to the county clerk with the remaining records contained that information.

It might not be inappropriate at this juncture to remark that upon the trial in all of those instances where the returns of inspectors of the votes cast were incomplete, due to the omission of the total votes cast, the rosters of the precincts involved were complete even to certification by the inspectors and supplied the necessary information.

Unquestionably the statutory duties of the county clerk are purely ministerial. But to concede to the county clerk the right to canvass the results of the primary election by resorting to other official election records to supply omissions in the official returns, is not to admit the exercise by that officer in so doing of any judicial function. That the necessity may exist for the ascertainment from official sources other than the returns of the state of facts on which the performance of his official duty depends does not operate to convert it into an act judicial in its nature. As said by the court in *Grider* v. *Tally*, 77 Ala.

422, 426 : "That a necessity may exist for the ascertainment, from personal knowledge, or by information derived from other sources, of the state of facts on which the performance of the act becomes a clear and specific duty, does not operate to convert it into an act judicial in its nature." The county clerk in resorting to official records other than the returns is not going behind the returns but merely supplementing the same to the extent of their omissions. In so doing he is not doing any more than what the inspectors of election should have done. He resorts to the same material to which the inspectors would have resorted and employs the same figures that the inspectors would have employed. To that extent the county clerk is acting in a ministerial and not in a judicial capacity. (*State* v. *Byrne*, 65 N. D. 283, 258 N. W. 121, 124.)

The demurrers should have been sustained upon the ground discussed and the petitions dismissed.

*P. Silver* for petitioners, argued but filed no brief.

*H. Irwin* and *W. B. Lymer* (Irwin & Harlocker and W. B. Lymer on the briefs) for respondents.