[File No. 6454.]

STATE OF NORTH DAKOTA EX REL. W. F. SCHMEDING, Petitioner, v. DISTRICT COURT OF THE SIXTH JUDICIAL DISTRICT IN AND FOR MORTON COUNTY, STATE OF NORTH DAKOTA, The Honorable F. T. Lembke, Judge of Said Court, and W. J. Godwin, Respondents.

(271 N. W. 137.)

Opinion filed January 19, 1937.

*C. Liebert Crum,* for petitioner.
*Hanley & Hanley,* and *Francis Murphy,* for respondents.

BURR, J. W. J. Godwin commenced an action in the district court of Morton county, in which W. F. Schmeding, his counsel C. Liebert

Crum, and B: W. Shaw, M. J. Tobin, A. F. Erberle, and E. B. Haight, a notary public, were made defendants, seeking to enjoin defendants from proceeding in a legislative contest.

The county of Morton constitutes the 30th senatorial district of the legislative assembly and is entitled to three members in the house of representatives. At the last general election there were six candidates for these offices. W. J. Godwin, the plaintiff in the case under review, received 3,233 votes, being the third highest number of votes, and W. F. Schmeding received 3,092 votes, being the fifth highest number of votes, and a certificate of election was issued to W. J. Godwin. On November 25, 1936 W. F. Schmeding served a notice of contest upon Godwin, and on December 1, 1936 served notice of the taking of the depositions of Judge B. W. Shaw, M. J. Tobin, county auditor, and A. F. Erberle before E. B. Haight, a duly qualified notary public, who issued a subpœna to each of these witnesses. There is some disagreement between the interested parties as to the facts and their legal effect—much of which becomes immaterial.

The complaint states that under the compelling force of the said subpœna Judge Shaw would not only appear as a witness as required by the subpœna, but would bring with him the ballots held by him as custodian, deliver them to the said notary, and that the seals on said ballots would be broken for the purpose of opening and examining the ballots in furtherance of this contest; and that M. J. Tobin would bring official papers in his custody. It is also claimed in the complaint that no proper notice of contest was prepared or verified by Schmeding; that the notice "did not contain any venue," nor show "in what court or before what body the said purported contest was instituted, nor in what county such proceedings were attempted to be brought; that such notice of contest did not have the approval of the State's Attorney of Morton county . . . and although . . . the said contest had an endorsement of two sureties for costs, such sureties were not approved by the clerk of the district court of Morton county . . . or of any other county . . . ."

The complaint further alleges that this contest was brought prematurely in that it was instituted "before the final determination by the said State Board of Canvassers" and in general that Schmeding and others made defendants are intending to proceed with said con-

test, break the seals on the ballots, cause the same to be publicly exhibited, destroy the secrecy of the ballots and the preservation thereof under seal and under lock and thus make it possible for persons to tamper with the said ballots after the seal has been broken and in that case "in the event a proper and legal contest should be instituted before the House of Representatives of the State of North Dakota," the plaintiff will be placed at a disadvantage and this act would "deprive him of his legal right to have the said ballots preserved unmolested and undisturbed and in their true and original condition as contemplated by the law, and will completely deprive him of his legal rights in defending his claim to the office to which he was elected . . . in the event a proper contest should later be instituted before the House of Representatives or in the event the said purported contest should be deemed proper and legal."

In this action an order was issued by the district court, directed to the defendants requiring them to show cause why an injunctional order should not issue and provided:

"1. That, during the pendency of this action and until further order of this Court, the Defendants, W. F. Schmeding and C. Leibert Crum, their servants, agents, attorneys and employees, be enjoined and restrained from further proceeding under the election contest mentioned and described in the Complaint, wherein the Defendant, W. F. Schmeding, contests the election of the Plaintiff as member of the House of Representatives of the State of North Dakota from the 30th Legislative District; and be enjoined and restrained from taking the depositions of any witnesses in connection with such contest, and particularly from taking the depositions of B. W. Shaw, M. J. Tobin and A. F. Erberle, or from requiring such Defendants last named to produce and submit the original records of the election held on November 3rd, 1936, in Morton County, North Dakota, or the original ballots cast for the office of member of the Legislative Assembly from the 30th Legislative District of the State of North Dakota, or from breaking the seals in which such ballots are enclosed or sealed, or from producing or exhibiting such before the Defendant, E. B. Haight, as notary public, on the 4th day of December, 1936, or at any other time, and as required under the notice to take depositions, or otherwise, or from subpoenaing or taking the depositions of

any other persons as witnesses in behalf of the said Defendant, W. F. Schmeding, in the said contest.

"2. That, during the pendency of this action and until further order of this Court, the Defendants, B. W. Shaw, individually and in his official capacity as Judge of the County Court, and M. J. Tobin, individually and in his official capacity as County Auditor, and the Defendant, A. F. Erberle, individually and in any official capacity he may occupy, and their servants, agents, attorneys and employees, be each enjoined and restrained from appearing and testifying as witnesses or giving their depositions before E. B. Haight, as notary public of Morton County, North Dakota, in the District Court Room in the County Court House of the City of Mandan, Morton County, North Dakota, on the 4th day of December, 1936, at 10 o'clock A.M., or at any other time and place, to testify as witnesses for the Defendant, W. F. Schmeding, in connection with the contest mentioned and described in the Complaint; and be enjoined and restrained from producing or exhibiting the ballots cast for members of the Legislature from the 30th Legislative District of the State of North Dakota at the general election held on November 3rd, 1936, or from breaking the seals around such ballots, or in which they were enclosed, or to in any manner tamper with, or permit any other person to tamper with, the same; and that the Defendant, B. W. Shaw, individually and as County Judge of Morton County, North Dakota, his servants, agents, attorneys and employees, be restrained and enjoined from producing and exhibiting the said ballots so cast at the said election before the Defendant, E. B. Haight, as notary public, and as witness in the said contest, or from breaking the seal in which such ballots are enclosed and sealed.

"3. That, during the pendency of this action and until further order of this court, the Defendant, E. B. Haight, her servants, agents, attorneys and employees, be enjoined and restrained from issuing any subpœna ordering or requiring the production of the ballots cast at the general election for the office of member of the Legislature of the 30th Legislative District of the State of North Dakota at the general election held in Morton County, North Dakota, on November 3rd, 1936, or from requiring the Defendants, B. W. Shaw, M. J. Tobin, A. F. Erberle; or any other witness, to testify in connection therewith,

or to submit or exhibit such original ballots or to break the seals thereof at such hearing or taking of the depositions on the 4th day of December, 1936, at 10 o'clock A.M., or at any other time; and be enjoined and restrained from taking the depositions of the said witnesses last named before her, as notary public of Morton County, North Dakota, at the District Court Rooms in the City of Mandan, Morton County, North Dakota, on the 4th day of December, 1936 at the hour of 10 o'clock in the forenoon of that day, or at any other time or place.

"4. That, in the meantime and until further order of this court, the Defendants, and each of them, their servants, agents, attorneys and employees, are hereby enjoined and restrained from doing any of the acts mentioned in paragraphs 1, 2 and 3 hereof, or any of the acts that the Plaintiff seeks to enjoin the Defendants from committing, and as set forth in the complaint."

The case to be reviewed is not one where the contestant seeks the support of the courts. Application was made to this court, in the exercise of its general superintending control of all inferior courts, for an appropriate writ addressed to the district court of the sixth judicial district in and for Morton county staying further proceedings in said court in that action, setting forth that in said action the defendants therein were restrained from further proceedings in connection with a legislative contest. An order to show cause was issued and the matter presented to this court for determination.

Under the provisions of § 1008 of the Supplement as amended by chapter 133 of the Session Laws of 1935 the judges in each election precinct are required to take all ballots counted by them except those which are void and fold them securely in manila wrappers and endorse on each wrapper in writing or print the number of the precinct and date on which the election was held "and securely seal such wrappers by sealing them with sealing wax and stamping on said wax the name of the county with a metal stamp provided for that purpose, so that said wrappers cannot be opened without breaking the seal, and return, . . . by mail . . . , said ballots together with those found void, to the county judge" of the county.

Judge B. W. Shaw is now and for many years last past has been the county judge of Morton county. Said § 1008 of the Supplement

as amended by chapter 133 of the Session Laws of 1935 provides that: ". . . Immediately upon receiving such ballots, the county judge shall give receipt therefor to said judges of election, and shall place them properly arranged in the order of the precinct numbers in boxes which shall be securely locked. Said boxes shall be placed in a fireproof vault and shall be securely kept for four months, not opening or inspecting them *nor allowing any one else to do so, except upon order of court, in case of contested election, or when it shall be necessary to produce them at a trial for any offense committed at election."*

The subpoena served upon Judge Shaw required him to appear at the courthouse in Morton county on December 4, 1936, to testify as a witness for the relator herein and required him to bring with him "at said time to said place the party ballots cast for state officers, including legislative candidates in the last general election, the poll books of said election, and also all envelopes, affidavits, applications for absent voters' ballots used in connection with such last general election in Morton county, North Dakota."

The county judge is not the custodian of the poll books of the election nor of the "envelopes, affidavits, applications for absent voters' ballots" used in connection with the election. Nor is he the custodian of the ballot boxes.

The defendant M. J. Tobin is now and for some time past has been county auditor of Morton county and the subpoena served upon him required him to bring to the said hearing the "record of applications for absent voters' ballots and lists of registered voters for each of the precincts of Morton county, North Dakota, which were used in connection with the last general election . . .," which were in his custody. A similar subpoena was made and served upon the defendant Erberle.

The matter before us for determination is the legality of the action of the district court—is the showing before said court sufficient to invoke its jurisdiction, and if so how far reaching should be its order? The merits of the contest are not before us.

Article 2 of the Constitution of the State deals with the legislative department, vesting the legislative power in a senate and a house of representatives. Section 47 of the Constitution provides: "Each house shall be the judge of the election returns and qualifications of its own members." This means sole judge. Corbett v. Naylor, 25

R. I. 520, 57 A. 303. "No other department of the government has any authority under the Constitution to adjudicate upon that subject. The grant of power (to each house) is comprehensive, full and complete. It is necessarily exclusive, for the Constitution contains no words permitting either branch of the Legislature to delegate or share that power. It must remain where the sovereign authority of the state has placed it." Greenwood v. Board of Registrars, 282 Mass. 74, 184 N. E. 390. Under the provisions of our Constitution the legislature could not even confer upon the courts the power to determine finally who was entitled to a seat in the legislature. See State ex rel. Smith v. District Ct. 50 Mont. 134, 145 P. 721. Neither house, nor the two houses together, "can abridge the power vested in each house separately of a final decision as to the qualifications of one of its members, or transfer that power to any other tribunal or officer." State v. Gilmore, 20 Kan. 551, 27 Am. Rep. 189; Van Winkle v. Caffrey, 12 N. J. Mis. R. 834, 175 A. 362. Nor does the decision of the State Board of Canvassers control. Anderson v. Blackwell, 168 S. C. 137, 167 S. E. 30. Consequently, even legislation cannot hamper, limit, or direct either house in a contest matter. Legislation is not necessary to the exercise of such power; but this does not prevent the legislature, in the interests of orderly procedure and to facilitate its work, from indicating by law how a contest may be initiated, and § 68 of the Constitution—a part of said Article 2—provides, "The legislative assembly shall pass all laws necessary to carry into effect the provisions of this constitution." Such legislation, however, does not in any way bind either house in judging the election returns and qualifications of any of its members.

The house of representatives has continuing jurisdiction over its members and may exercise it at any time during the member's term. On its own motion it may inquire into the election returns and qualifications of its members, and despite legislation it may permit anyone to initiate a contest, or furnish information which will set this power of the house in operation. Its rights are not abridged by failure to commence proceeding within the time fixed by statute. See State ex rel. Smith v. District Ct. 50 Mont. 134, 145 P. 721.

The house may for its own convenience permit depositions to be taken before notaries and justices, or any other person it designates.

Such officials have no right or authority to decide matters, even though empowered to make conclusions. The final authority is in the house itself, and such officials are merely commissioners of the house. State ex rel. McKusick v. Peers, 33 Minn. 81, 21 N. W. 860. They have no judicial functions, they do no judicial acts, and they pass finally upon no questions. They are agents of the house—not of the courts —nor can the courts interfere with these officials in doing what the legislature permits. The two houses of the North Dakota legislature have heretofore agreed upon a mode of procedure—doubtless for the purpose of facilitating each house in arriving at correct conclusions in case the qualifications or election of a member is called in question and should be investigated. Such method of procedure is found in Article 23 of the Compiled Laws, being §§ 1070 to 1089 of the Political Code. These sections must be interpreted in the light of the powers of each house, and unless they refer to election contests of a different type, they are not affected by statutory provisions governing the other type, except in cases where a fair implication arises from the provisions of said §§ 1070 to 1089 inclusive. Being the express order of each house with reference to matters exclusively belonging to each house, these sections are to be interpreted as being exclusive of any other power or act on the part of those authorized to take depositions or perform any act under the provisions of these sections. When each house proceeds to judge the election and qualifications of a member of the house, it may ignore these provisions entirely, it may permit a contest to be brought by anyone at any time during the term of the member involved.

According to the notice of contest defendant Schmeding would be entitled to the certificate of election had the votes been canvassed properly and plaintiff Codwin would be declared defeated.

Section 1070 of the Compiled Laws provides: "When any person intends to contest the election of a member of the legislative assembly, he may, within ten days after the result of such election shall have been determined by the board of canvassers, give notice in writing to the member whose seat he desires to contest of his intention to contest the same, and in such notice shall specify particularly the grounds upon which he relies in the contest."

Each house knew that it could receive information from any source

it saw fit, could permit any person to furnish such information, or could initiate proceedings on its own motion. It was not the intention of the legislature to limit proceedings to question the right or authority of any person to a seat in either house.

Were the action pending in the district court brought by one seeking to initiate a contest under the provisions of these sections, and seeking to invoke the authority of this legislation, he would be required to show he had brought himself within the terms of the statute and he would be confined to the limits prescribed therein. But the contestant is not appealing to the court for aid. He is not invoking the jurisdiction of the court and we must determine whether the court may under any circumstances stay his hand as requested.

The inquiry of each house may be made at any time. Each house may accept notices of contest or information regarding facts long after the date prescribed in § 1070. The house is not concerned with whether a contest is brought prematurely or at too late a period, and the question of whether it will consider the contest is for the house to determine without reference to the provisions of § 1070. It is not for the court to say whether the contest was brought prematurely or at too late a date. This legislation has authorized anyone who intends to contest the election of a member of either house to give notice of his intention and to proceed to take testimony. Section 1072 and following sections prescribe a method for the taking of this testimony and provide that such depositions may be taken in the manner and upon the notice prescribed in the Code of Civil Procedure for the taking of depositions in civil actions and any notary public or justice of the peace in the county where the testimony is to be taken is authorized to issue a subpœna to compel the attendance of witnesses, and such notary public or justice of the peace is authorized to issue this subpœna and direct the witness to appear before him at a time and place named therein to give his testimony, except that the witness cannot be required to attend out of the county in which he resides or is served with a subpœna. Provision is made for the taking of the depositions of non-resident witnesses, and rules are laid down as to how the testimony is to be transcribed, to whom forwarded, and how the expenses are to be paid.

There is no complaint on the part of anyone who has been sub-

pœnaed. No witness is complaining or seeking to avoid giving testimony, and no aid of the court is sought to compel him to appear. If a witness were being subjected to inconvenience or annoyance or threatened with penalty for failure to obey the subpœna, then the court on his application could inquire as to whether or not subpœna was issued in a case where the contestant had brought himself within the terms of the statute authorizing the issuance of the subpœna. This is not the situation here. If the contestant desires to scour the country, take affidavits here and there, and witnesses are willing to appear and depose, it is not for the courts to interfere. That is a matter to submit to the house. It is well settled that the courts should not assume authority to take any steps in legislative contests unless clearly authorized, and then only to the extent specifically given. See State ex rel. Norwood v. Nelson, 141 Minn. 499, 169 N. W. 788. The contestant submits his showing to the legislature. Until the legislature acts thereon he has no right to apply for a recount or a recanvass.

It is true the action of the house in determining the election returns and qualifications of a member is judicial in character, but this does not make the house such a court that the general superintending control given by the supreme court over inferior courts applies. Auditor Gen. v. Menominee County, 89 Mich. 552, 51 N. W. 483.

State ex rel. O'Donnell v. Tissot, 40 La. Ann. 598, 4 So. 482, lays down the rule that the courts have no "power to take the depositions of witnesses relating to such contests, nor the authority to cause the ballot-boxes to be produced in court, and the seals placed thereon by the commissioners of election removed, the boxes opened, and the ballots recounted." Here an attempt was made to have the courts examine the ballots on the theory that it was a proceeding to perpetuate testimony and assist the legislature to dispose of the election more speedily, but in contesting an election the contestant does not have recourse to the courts to assist him.

This does not necessarily mean that because some issue is connected with a seat in the legislative assembly, courts are debarred from considering it. Courts have jurisdictions to hear and determine whether a certificate of nomination should issue (State ex rel. McAvoy v. Gilliam, 60 Wash. 420, 111 P. 401) or whether the board of canvassers

should issue a certificate of election. People ex rel. Sherwood v. State Canvassers, 129 N. Y. 360, 29 N. E. 345, 14 L.R.A. 646; Madden v. Election Comrs. 251 Mass. 95, 146 N. E. 280. These are ministerial actions—duties of various officers. The principle involved determines the nature of the issue. As shown in State ex rel. Williams v. Meyer, 20 N. D. 628, 127 N. W. 834, the courts have power to direct the county auditor to file the petition of a candidate for senator and direct the publication of his name upon the ballot. This does not infringe the constitutional powers of each house to judge of the election returns and qualifications of its own members.

Section 1084 provides: "The officer before whom any deposition is taken shall have power to require the production of papers, and, on the refusal or neglect of any person to produce and deliver up any papers in his possession pertaining to such election, or to produce certified or sworn copies of the same in case they are official papers, such persons shall be liable to all the penalties prescribed in § 1079. All papers thus produced and all certified or sworn copies of official papers shall be transmitted by the officer, with the testimony of the witnesses, to the secretary of state for the use of the legislative assembly."

The powers vested in notaries and justices to take depositions in a contest for the seat in legislature is not a judicial power, but rather such as might be vested in commissioners, or in a committee of one of the houses. State ex rel. McKusick v. Peers, 33 Minn. 81, 21 N. W. 860. As said therein, "Over their actions the courts have no supervision any more than over the action of a committee of one of the houses. For this reason, the writ of prohibition will not issue to restrain them, unless they assume functions beyond those with which they are clothed by these sections, *and judicial in their character.*" As it is not claimed the notary is attempting to make findings or pass upon any question, it is clear he is not attempting to exercise judicial functions.

But the orders of the notary public contained in the subpœnas directed to the county judge and the county auditor, requiring these officials to bring with them and surrender the custody of the ballots and other election records of which they are the custodians, present an entirely different question. The notary public has no power other

than what is given him by § 1084 already quoted. The term "papers" as used in that section very clearly does not refer to official papers, for provision is made for certified copies in case of official papers. The records of which these county officials are custodians are official papers. The county judge, by statute, is forbidden to surrender custody of the ballots without an order of the court. It is admitted no order of the court was secured, and chapter 133 of the Session Laws of 1935 providing for their surrender upon an order of the court is only "in case of contested election, or when it shall be necessary to produce them at a trial for any offense committed at election." Very clearly this means election matters which come before the court for determination. It is true that in an investigation by the house that body has a right to demand the possession and surrender of the ballots for examination and counting in such way as it may deem proper. It needs no statute for that purpose nor an order of the court. The constitutional power to judge of the qualifications of its members includes by implication the power to require the production of all documents to carry this power into effect, for "the provisions of (our) constitution are mandatory and prohibitory unless, by express words, they are declared to be otherwise." The legislature has already spoken as to the custody of these ballots. Nowhere has authority been given to a notary public or justice of the peace authorized to take depositions in a legislative contest to require the production of the ballots, the breaking of the seals, the change of custody, or any interference with the provisions of chapter 133 of the Session Laws of 1935. Clearly the notary public can not require the production of the ballots, whatever the house itself may do. Neither has the custodian of the ballots the right to surrender them to anyone unless required by proper authority.

But the question is raised that the district court has no authority to enjoin the county judge from producing the ballots; that the courts have no authority whatever to control or direct anything with reference to a legislative contest. While the courts have no control of legislative contests, nevertheless the courts have a right to interpret the provisions of §§ 1070 to 1089 when resort to these sections affects matters over which the courts do have control. There can be no ques-

tion but what Mr. Godwin, the plaintiff in the injunction suit, has a vital interest in seeing that the ballots are protected properly, that the legal custodian thereof keeps them safely, and that the official duty is being performed. The complaint shows that the county judge is prepared to surrender custody under the mistaken theory that the legislative commissioners have authority to require the production of the ballots. As we have shown, these commissioners have not been so clothed with power by the legislature or by the house of which they may be commissioners. It is not the house of representatives which is demanding the production of the ballots. There is no reflection upon the integrity or good judgment of the county judge. We take the complaint as it stands, and at the present time the record does not show that the county judge has refused to produce the ballots—in fact, the record shows that he is prepared to do so under the theory that he is required to do so. Safeguarding the ballots is a matter of extreme importance in a democracy where the will of the people governs the action of the State. The ballots are the expression of the will of the people in choice of officers and in all matters submitted to the people. The county judge is the official charged with the duty of preserving them in the condition in which they were delivered to him, and not only is every citizen interested in seeing the purity of the ballot safeguarded, but those affected by the contest have a special interest in seeing that the duty is performed. To whom can the public turn for enforcement of this duty but to the courts? By enjoining the county judge from surrendering custody of the ballots, the courts are not in any way interfering with the power and prerogatives of either house of the legislature. The courts are preserving the ballots in the form, in the place, and with the official provided for by the legislature. What we have said with reference to the county judge applies in principle to the official papers required to be kept by the county auditor.

Plaintiff Godwin cites the case of State ex rel. Ingles v. Circuit Ct. 63 S. D. 313, 258 N. W. 278. While there is a remarkable similarity between this South Dakota case and the case involved here, we are not prepared to adopt that decision as authority on all points involved here. The scope of the injunction issued in this case is such as by its very terms would prevent the defendants from giving testimony

at any time and at any place, in the contest said to be started or in one said by the complaint to be contemplated. We hold the district court had jurisdiction to issue an injunction to prevent tampering with the ballots or the change of the custody of the ballots; but the injunction issued is too broad in its nature. Certainly the defendant Schmeding and his counsel should not be prevented from initiating a contest in this case nor securing testimony from willing witnesses. We are not saying that any witnesses subpœnaed under the contest already brought could be. punished for failing to obey the subpœna or in the courts of the State would be subjected to the penalties prescribed. We can determine that when the matter is submitted to us. In South Dakota there is nothing to indicate the Supreme Court has supervisory jurisdiction over the lower courts and the contestant in that case commenced an original proceeding in the Supreme Court. Clearly where he commences an original proceeding and bases it upon the statute, he must show he complied with the statute; but in the case at bar he is the defendant in the Godwin case, subject to the penalties for disobeying the injunction. The effect of the injunction would be to prevent him bringing a contest at all at any time, and as the time is short we considered it advisable to exercise the constitutional prerogative of supervision.

We need not pass upon the other questons raised in the action for injunction.

The members of the court are also all agreed that:

In so far as the restraining order issued by the District Court enjoins the county judge of Morton county "from producing or exhibiting the ballots cast for members of the Legislature from the 30th Legislative District of the State of North Dakota at the general election held on November 3rd, 1936, or from breaking the seals around such ballots, or in which they were enclosed or to in any manner tamper with, or permit any other person to tamper with the same," is concerned, the restraining order was properly issued.

In so far as said restraining order directs the county auditor not to "produce and submit the original records of the election held on November 3rd, 1936 in Morton county, North Dakota," on file in his office is concerned, the injunction was properly issued.

A majority of the court are of the opinion that:

In so far as the restraining order enjoins the defendant "from taking the deposition of any witnesses in connection with such contest" to determine the right of the plaintiff herein to a seat in the house of representatives; "or from subpœnaing or taking the depositions of any other persons as witnesses in behalf of the defendant" Schmeding, in said contest; or any of the defendants from appearing and testifying as witnesses or giving their depositions before E. B. Haight as notary public; or "any of their servants, agents, attorneys, and employees" "from appearing and testifying as witnesses or giving their depositions . . . at any time or place" in connection with the contest mentioned in the complaint is concerned, the restraining order was improvidently issued.

It is therefore ordered that a supervisory writ be issued directing the district court of Morton county or the Honorable F. T. Lembke, the Judge thereof, to modify the restraining order involved in this proceeding so as to eliminate therefrom the provisions which enjoin the defendants "from taking the deposition of any witnesses in connection with such contest" and "from subpœnaing or the taking of the depositions of any other persons or witnesses in behalf of the defendant" Schmeding in said contest or any of the defendants from appearing and testifying as witnesses or giving their depositions before E. B. Haight as notary public, or "any of their servants, agents, attorneys and employees . . . from appearing and testifying as witnesses or giving their depositions . . . at any time or place" in connection with the contest mentioned in the complaint.

Christianson, Ch. J., and Burke, J., concur.

Nuessle, J. To the extent that the foregoing opinion holds that the district court acted within his jurisdiction in issuing the injunctional order on account of which the relator complains, I concur. I am not able, however, to agree with all that is said in the opinion. I think the relator has not complied with the requirements of the statute under which he is attempting to bring this contest, and so the writ he seeks should be wholly denied.

It seems to me, reading article 23, chapter 11, of the Political Code, §§ 1070–1089, Comp. Laws 1913, in the light of the preceding sec-

tions dealing with contests of elections, that in order to take advantage of the provisions of this article "any person" who desires to do so must first show himself either to be a claimant for the seat to which the contestee has been declared elected and entitled to the same if he sustains his challenge to the contestee's right thereto, or must show himself otherwise entitled to set the machinery of said article 23 in motion. He must, in addition, in all other respects conform to the requirements of the article. Unless he does the individual whose election he seeks to challenge can invoke the aid of the proper court, as the respondent Godwin did, to save himself from the annoyance and the probable prejudice that will result from an abortive contest. To hold otherwise would make it possible not only for any elector in that particular district but for any other person, however malicious or corrupt his motives, to bring "a contest." A hundred different contests by a hundred different "persons," each setting forth different particular grounds, might be brought, and when notices thereof were served pursuant to § 1070, the contestee must answer pursuant to § 1071 under pain of having all the allegations contained in the notices taken as admitted by him. And so with respect to all the other provisions of article 23.

I fully agree that under the Constitution, § 47, each house of the legislative assembly is the sole judge of the election returns and of the qualifications of its own members, and that neither house, nor the two houses together, can abridge the power vested in each house separately to make a final decision as to the qualifications of any of its members. But article 23 is the act of both houses of the legislature, approved by the governor. And this law thus made lays down the rules to be followed in certain legislative contest cases. When those rules are complied with the contestant has certain rights and privileges. If those rules are not complied with he does not have those rights and privileges. If this be not so what need can there be for the article; or what virtue can there be in it? Whether or not a contestant who seeks to enjoy the privileges thus accorded and exercise the rights thus afforded is entitled to do so, is a judicial question.

Here, the relator purports to be a contestant. He purports to be proceeding under and pursuant to article 23. He seeks to enjoy the

privileges and exercise the rights given by that article without complying with its requirements. This he cannot do.

: The district court considered the showing made by the relator and held—and this the relator himself contends—that he was attempting to proceed under article 23. As I read the order, on account of which the relator complains and which he seeks to set aside, it does nothing more than enjoin him from proceeding under the provisions of that article. It does not prohibit him or anyone else from gathering such information as they may see fit to gather touching the election of Mr. Godwin. It does not enjoin him or anyone else from procuring such affidavits as they may wish to procure, from taking such statements as they may be able to obtain or from doing anything they may see fit to do so long as they do not purport to act under color and by authority of the provisions of article 23. It does not purport to enjoin the relator from proceeding with a proper contest in a proper manner, nor from presenting any matter pertinent to Mr. Godwin's election or to relator's challenge thereof to the legislative assembly.

MORRIS, J., concurs in the views expressed by NUESSLE, J.