STATE ex rel. Allen I. OLSON, Attorney General, and Ben Meier, Secretary of State, Petitioners,

v.

Alfred THOMPSON, Judge of the Burleigh County District Court, and Norma J. Kuhn, Respondents.

Civ. No. 9292.

Supreme Court of North Dakota.

Dec. 5, 1976.

Allen I. Olson, Atty. Gen., and Gerald W. VandeWalle, Chief Deputy Atty. Gen., Bismarck, for petitioners; argued by Mr. VandeWalle.

Pearce, Anderson, Thames & Durick, Bismarck, of counsel; Jonathan C. Eaton, Jr., Minot, for respondents; argued by B. Timothy Durick, Bismarck, and Mr. Eaton.

PAULSON, Judge.

This is an original petition for a supervisory Writ of Prohibition brought by the Attorney General of the State of North Dakota and the Secretary of State of the State of North Dakota requesting that this court exercise its superintending control, pursuant to § 86 of the North Dakota Constitution, over the District Court of Burleigh County in the manner specified in such petition, and requesting that this court compel the North Dakota State Board of Canvassers to meet for the purpose of recanvassing and, if necessary, correcting any previous certification of election results of the general election held on November 2, 1976, for the office of State Representative for the 41st Legislative District of the State of North Dakota.

On the 1st day of December, 1976, on application of Norma J. Kuhn, the Honorable Alfred A. Thompson, a judge of the Burleigh County District Court, issued to and had served upon the members of the State Board of Canvassers an instrument entitled Alternative Writ of Prohibition and Alternative Writ of Mandamus, ordering the State Board of Canvassers to

". . . desist and refrain from any further proceedings in said matter [the recanvassing and, if necessary, correcting of any previous certification of election results for the office of State Representa-

tive for the 41st Legislative District of the general election held on November 2, 1976] and that Ben Meier as North Dakota Secretary of State, forthwith issue to Norma J. Kuhn a Certificate of Election, and that the Defendants show cause by due return to this Writ before this Court at it's [sic] Chambers in the Burleigh County Courthouse at Bismarck, North Dakota, at 9:30 o'clock A.M., on the 9th day of December, 1976, or as soon thereafter as counsel may be heard, why this Order should not be absolute."

The 9th of December, 1976, is the third day of the 3-day organizational session of the legislature required by § 54–03.1–02, N.D. C.C. Section 53 of the North Dakota Constitution mandates that the organizational session be held during the month of December following the election of its members and authorizes the legislature to set the specific dates for the organizational session. Thereafter, Allen I. Olson, Attorney General, and Ben Meier, Secretary of State, petitioned this court for a Writ of Prohibition to command that

". . . Alfred Thompson, Judge of the District Court of Burleigh County, desist from any further proceeding in this matter; that the Court issue its order directing and commanding the State Board of Canvassers to meet pursuant to sections 16–13–15 and 16–13–47.1 of the NDCC for the purpose of recanvassing and, if necessary, correcting any previous certification of election results for the office of State Representative from the 41st District; that the Court dissolve the Alternative Writ of Prohibition and Alternative Writ of Mandamus and dismiss the Petition therefore [sic]."

This matter arose following the November 2, 1976, general election. The county auditor of Ward County forwarded to the Secretary of State the certified abstract of votes required by law, including that of State Representative from the 41st District as follows:

Walsh ............... 2,402
Forsberg ............ 1,928
Wentz .............. 2,283
Kuhn ............... 2,291

Subsequent to the receipt of such certification, the Secretary of State was served with a copy of a Demand for Recount by Janet Wentz, pursuant to § 16–13–47.1, N.D.C.C., as amended, which provides as follows:

"*Recounts for congressional, state, and county offices—Procedure—Costs.*—Any person losing a primary, special, or general election contest for nomination or election to a congressional, state, legislative, or county office may demand a recount of the ballots cast in the manner and circumstances hereinafter provided. The demand may be made if the person shall have failed to be nominated in a primary election by less than two percent of the highest vote cast for a candidate of his party for the office sought, or the demand may be made by any person who failed to be elected at a special or general election by less than one-half of one percent of the highest vote cast for a candidate for that office. The demand must be made within ten days after the canvass of the votes of such election. After a demand and upon application to a judge of each appropriate district court, such court or courts shall issue orders directing that all ballots pertaining to such office shall be delivered forthwith to the respective court or courts. The person demanding such recount shall forward a copy of the application to the secretary of state, or to the county auditor in the case of county offices, at the time it is filed with the district court. The county canvassing board of each county, or such other persons as the court may select, shall recount the ballots in the presence of the court and, if requested, in the presence of the candidates or their representatives. Any candidate or any representative of any candidate for such office may object to the counting of any ballot. All ballots objected to shall be referred to the district judge for his decision, which shall be rendered at once. The results of such recount shall be certified by the district judge to the secretary of state, or to the county auditor in the case of county offices, no later than fifteen days after the application for a recount has been filed. The costs of such recount shall be borne by the counties involved. The members of the county canvassing board or such other persons selected by the district judge to assist in such recount shall receive compensation and mileage as provided in section 16–13–16. The results of any recount of votes cast in an election of a member of the legislative assembly shall be admissible in either house of the legislative assembly, or before a committee of either house, as evidence to aid in the determination of an election contest pending in that house."

Pursuant to such demand, and upon the advice of the Attorney General, the Secretary of State did not issue a certificate of election to Kuhn, as a State Representative of the 41st Legislative District.

Within fifteen days after the Demand for Recount was filed by Wentz, the Secretary of State received the results of the recount conducted pursuant to § 16–13–47.1, N.D.C.C., as amended, certified by the Honorable William M. Beede, District Judge of Ward County, which indicated the following:

| | |
|---|---|
| Kuhn | 2,205 |
| Wentz | 2,206 |
| Walsh | 2,311 |
| Forsberg | 1,850 |

Pursuant to §§ 16–13–15 and 16–13–47.1, N.D.C.C., and upon the advice of the Attorney General, the Secretary of State called a meeting of the State Board of Canvassers for December 1, 1976, at 11:00 a. m., for the purpose of recanvassing and, if necessary, correcting any previous certification of election results for the office of State Representative from the 41st Legislative District. Section 16–13–15, N.D.C.C., provides as follows:

"*Time of county canvassing board meeting—Oath required—Reconsidera-*

*tion of canvass.*—As soon as the returns are received by the county auditor, but not later than five days after each election, the county canvassing board shall meet and, after taking the oath of office, shall proceed to open and publicly canvass such returns. After the initial meeting of the board as provided in this section, any two or more members may call a meeting of the board and upon approval of a majority of the members, the board shall recanvass the results of the election or any portion thereof and may correct any previous canvass or certification or both in regard to such election. Any correction of any previous certification of election results as provided in this section shall be immediately dispatched to the secretary of state who shall call a meeting of the state board of canvassers as provided in section 16–13–36 for the purpose of recanvassing and, if necessary, correcting any previous certification of the election results."

The State Board of Canvassers assembled on December 1, 1976, but, before it took any action on the matter, the aforesaid writs which were executed by Judge Thompson were served upon the members of the State Board of Canvassers.

■ The only issue before this court is the authority of the State Board of Canvassers to reconvene subsequent to the close of the board's regular meeting prescribed by statute, to recanvass and, if necessary, to correct any previous certification of election results of the general election held on November 2, 1976, for the office of State Representative for the 41st Legislative District.

■ In our perusal of the procedures available to resolve contested North Dakota legislative election results, we note that two procedures are available to candidates for the legislature: (1) election contests in the house of the legislative assembly wherein the candidate contesting seeks admission, pursuant to § 47 of the North Dakota Constitution, Chapter 16–14, N.D.C.C., and § 54–03–07, N.D.C.C.; and (2) ballot recounting in the presence and under the supervision of a judge of each appropriate district court pursuant to § 16–13–47.1, N.D.C.C.

■ We note the use of the first procedure set out above, as exemplified by an election contest in the North Dakota Senate in 1957 involving the admission of a state senator from the 19th Legislative District. There the candidate certified by the State Board of Canvassers was issued a certificate of election by the Secretary of State [Senate Journal of the 35th Session of the Legislative Assembly (hereinafter 1957 S.J.)]. Notice of an election contest had been filed with the Secretary of State, who had transmitted the same to the President of the Senate, but the matter was not heard until after the State Senate had assembled for the 35th Legislative Session—after the certified senatorial candidate had already participated in the organization of the State Senate [1957 S.J., p. 12]. Once the matter had been raised on the floor of the State Senate, it was referred to a specially appointed committee of five which proposed rules to the full State Senate for the purpose of judging said election contest [1957 S.J., pp. 12, 16–17]. Applying such rules, the special committee conducted a recount of the contested election and submitted its findings to the Senate as a whole [1957 S.J., pp. 43–45], which in turn acted to adopt such findings [1957 S.J., p. 59]. The foregoing is offered only as one of many illustrative examples of how each house of the legislative assembly has the power to adopt its own rules—rules which may be changed from one legislative session to another—to resolve an election contest pursuant to § 47 of the North Dakota Constitution. Each house is free to adopt whatever procedure it deems appropriate for the given case and neither house is affected in this process by the ministerial acts of the State Board of Canvassers, or of the Secretary of State in issuing certificates of election.

■ Next, we turn to the second procedure available to candidates intending to contest legislative election results—the ballot recount procedure set forth in § 16–13–47.1, N.D.C.C., set out earlier herein. We note that such procedure is a very recent

addition to our election laws, having been enacted in 1971, and amended in 1973 in order to apply § 16–13–47.1 to county elections. We further note that this ballot recount procedure does not supplant a determination by each legislative house of who are qualified members thereof.

The respondents herein contend that the recount procedure in § 16–13–47.1, N.D.C.C., is intended only to provide evidence to be used in an election contest proceeding held in the legislature pursuant to Chapter 16–14, N.D.C.C. Such an interpretation, respondents contend, is compelled by the statutory scheme set forth in Chapter 16–13, N.D.C.C., which does not provide for the "recanvassing" of the recount results. We reject such contention, noting that such construction would make the recount performed by the district court an idle act.

Section 31–11–05(23), N.D.C.C., provides: "23. The law neither does nor requires idle acts."

In *Perry v. Erling,* 132 N.W.2d 889, 896 (N.D.1965), this court quoted with approval from 82 C.J.S. Statutes § 325 (1953):

"In construing a statute, the spirit of the enactment must be considered and the statute should if possible, be construed in accordance therewith. In pursuance of the general object of giving effect to the intention of the legislature, the courts are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof, it being generally recognized that whatever is within the spirit of the statute is within the statute, although it is not within the letter thereof, while that which is within the letter, although not within the spirit, is not within the statute. Effect will be given the real intention even though contrary to the letter of the law.

"The rule of construction according to the spirit of the law is especially applicable where adherence to the letter would result in absurdity or injustice, * * *."

In *Haggar Co. v. Helvering,* 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940), the Supreme Court of the United States stated:

"All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose." [Citations omitted.]

Finally, § 1–02–01, N.D.C.C., provides, in pertinent part:

"*Rule of construction of code.—* . . The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be construed liberally, with a view to effecting its objects and to promoting justice."

In *Hughes v. State Farm Mut. Auto Ins. Co.,* 236 N.W.2d 870 (N.D.1975), in paragraphs 5 and 6 of the syllabus, this court stated:

"5. In construing legislation generally, it is our duty to attempt to determine legislative intent, and when that intent is directed toward an objective not prohibited by the state or federal constitution, our construction of the legislation should be in aid of and compatible with this intent.

"6. Statutes must be construed with reference to the policy intended to be accomplished, so as to effectuate the legislative purpose which prompted their enactment."

Applying the foregoing to the instant case, this court finds that § 16–13–47.-1, N.D.C.C., was adopted to provide for a means of recounting ballots cast for a legislative position when such a recount is demanded; and if such recount is to be more than an idle act, it must result in the issuance of a certificate of election issued to the recount victor. Issuance of such certificate does not usurp the legislature's own decision-making power pursuant to § 47 of the North Dakota Constitution. Such apparent conflict has been dealt with before by this court. In *State ex rel. Williams v. Meyer,* 20 N.D. 628, 127 N.W. 834, 837 (1910), this court stated:

"It is suggested that any decision of this court will be of no force and effect for the reason that by section 47 the Senate is made the judge of the election returns and qualifications of its own members. This court does not attempt to say what members shall be seated. It is simply passing upon the question of law presented with a view to determining whether the action of the county auditor is legal in refusing to file relator's petition and to print his name as a candidate for senator upon the primary election ballot. It is unnecessary for us to consider whether our decision may have any effect upon the action of the Senate in the premises should a new senator be elected, and both he and the old senator claim seats in the upper branch of the Legislature."

In *State ex rel. Sathre v. Byrne*, 65 N.D. 283, 258 N.W. 121, 124–125 (1934), this court stated:

"Aside from the quasi judicial power to determine the genuineness of the election returns before them, and in case of apparent mistake in the returns from any county, to take the necessary steps to have such mistakes corrected, the functions and duties of the members of the state board of canvassers are purely ministerial. [Citations omitted.] The state board of canvassers has no authority to determine any question concerning the legality of an election or to pass upon the eligibility of a candidate for office. [Citation omitted.] Such matters are wholly beyond the power of the state board of canvassers and are questions for determination in some appropriate proceeding in a judicial tribunal.

.     .     .     .     .

"In harmony with these principles the courts have held (practically unanimously) that election officers may not be restrained from canvassing the vote and declaring the result of an election, even though it be alleged that there was fraud and illegality in the election. [Citation omitted.] 32 C.J. pp. 256, 257. Nor will election officers be enjoined from giving a certificate of election to the successful candidate, even though it be charged that such candidate is ineligible. 'The right to hold office cannot be tried in a suit to enjoin certification of an election, the remedy being by quo warranto,' or by a contest, where the statutes provide the latter remedy. 32 C.J. p. 257; *State ex rel. Coffey v. McFarland,* supra; 2 High on Injunctions (4th Ed.) §§ 1312–1313."

And in *State ex rel. Schmeding v. District Court of Sixth Judicial District,* 67 N.D. 196, 271 N.W. 137, 143 (1937), this court stated:

"This does not necessarily mean that because some issue is connected with a seat in the legislative assembly, courts are debarred from considering it. Courts have jurisdiction to hear and determine whether a certificate of nomination should issue [citation omitted] or whether the board of canvassers should issue a certificate of election [citations omitted]. These are ministerial actions—duties of various officers. The principle involved determines the nature of the issue. As shown in *State ex rel. Williams v. Meyer, etc.,* 20 N.D. 628, 127 N.W. 834, the courts have power to direct the county auditor to file the petition of a candidate for Senator and direct the publication of his name upon the ballot. This does not infringe the constitutional powers of each house to judge of the election returns and qualifications of its own members."

Further, if, after the ministerial acts of recounting the ballots, certifying the election results, and issuing the certificates of election are completed, and a candidate who failed to receive certification still desires to file an election contest, § 16–13–47.1, N.D. C.C., specifically provides that:

".  .  . The results of any recount of votes cast in an election of a member of the legislative assembly shall be admissible in either house of the legislative assembly, or before a committee of either house, as evidence to aid in the determination of an election contest pending in that house."

We note that if the foregoing "evidence" function were the *only* intended use of a § 16–13–47.1, N.D.C.C., recount, such a recount would be an idle act. Each house of the legislative assembly is fully capable of counting ballots and, in determining ballot validity, is in no way bound by the rules adopted by a district court in its supervision of a § 16–13–47.1 recount; thus an interpretation as advocated by the respondents would add nothing to the statutory scheme of Chapter 16–13, N.D.C.C.

We believe the foregoing to dispose of the issue before this court, but lest we be charged with having failed to dispose of the respondents' arguments, we will briefly address ourselves to such arguments as extracted from respondents' written briefs and their oral arguments supporting respondents' basic premise that the statutory scheme set forth in Chapter 16–13, N.D. C.C., does not provide for the "recanvassing" of recount results.

First, respondents contend that once a canvassing board has adjourned, it cannot voluntarily reassemble. In support of their contention that a canvassing board cannot reconvene and recanvass the recount of the election ballots to make corrections certified by the recount board provided for in § 16–13–47.1, N.D.C.C., the respondents refer us to George W. McCrary, American Law of Elections (4th ed. 1897), which cites *Bowen v. Hixon,* 45 Mo. 340, a Missouri Supreme Court decision rendered in 1870. A part of the McCrary reference reads, at § 267, pages 201–202:

"A canvassing board having once counted the votes, and declared the result according to law, has no power or authority to make a recount. When this duty is once fully performed, it is performed once and forever, and cannot be repeated. In *Bowen v. Hixon* the Court say, 'To suppose that it could be renewed—that the canvass of one day could be repeated the next, and counter certificates be issued to different contestants as new light or influence was brought to bear upon the mind of the clerk—would render the whole proceeding a farce.' "

Both the text by McCrary and the Missouri decision are so barnacled with age that they are hardly pertinent in light of the development of election law in the interests of integrity.

In addition to the staleness of the *Bowen* decision, we believe it is distinguishable both on the facts and on the law.[1]

██ The North Dakota Legislature has taken two steps to allow canvassing board reassembly. The first, in 1969, amended § 16–13–15, N.D.C.C., to add the following language:

". . . *Reconsideration of canvass.* — . . . After the initial meeting of the board as provided in this section, any two or more members may call a meeting of the board and upon approval of a majority of the members, the board shall recanvass the results of the election or any portion thereof and may correct any previous canvass or certification or both in regard to such election. Any correction of any previous certification of election results as provided in this section shall be immediately dispatched to the

[1]. In *Bowen,* a county canvassing board convened within the statutory time period and issued a certificate of election to one candidate, then reconvened several days later, recounted the ballots, and issued a second certificate of election to another candidate. It is quite apparent from our reading of the *Bowen* opinion that Missouri, in 1870, had no statutory provision for a recount of ballots, and certainly not a court-supervised recount proceeding such as we have in § 16–13–47.1, N.D.C.C., nor did Missouri have a statutory provision for the reassembly of a canvassing board, as found in our § 16–13–15, N.D.C.C. The Missouri Court also referred to the fact that a notice of contest had been filed, and concluded that this action removed the matter to the county court, leaving no authority for the canvassing board to act.

Thus, we can see that *Bowen* is not in point with the case at bar, particularly since we have express statutory provisions for recount proceedings and the reassembly of both county and state boards of canvassers. The decision in *Bowen* did not focus on whether there existed authority to issue a second certificate of election, but whether there existed authority to recount the ballots—a matter which is clearly settled in the instant case.

secretary of state who shall call a meeting of the state board of canvassers as provided in section 16–13–36 for the purpose of recanvassing and, if necessary, correcting any previous certification of the election results."

The purpose of such amendment is to allow the county board of canvassers to correct any previous canvass or certification or both, and directing that "Any correction of any previous certification of election results as provided in this section shall be immediately dispatched to the secretary of state who shall call a meeting of the state board of canvassers as provided in section 16–13–36 for the purpose of recanvassing and, if necessary, correcting any previous certification of the election results.". The second change adopted by our legislature came with the enactment of § 16–13–47.1, N.D.C.C., providing for a recount procedure in the presence of and under the supervision of a district court judge. As stated earlier herein, such recount procedure, to have any purpose, impliedly requires that the State Board of Canvassers have the power to reassemble to act to correct its canvass as the result of a recount or certification or both if necessary.

The second contention that is raised by the respondents is that since § 16–13–47.1, N.D.C.C., provides specifically that recount results are to be used "to aid in the determination of an election contest pending in that house", that such an "evidence" function is to be the sole application of such recount results. As stated earlier herein, we disagree. Such a use would render the recount an idle act. Further, such interpretation fails to give significance to the short time period during which a recount under § 16–13–47.1, N.D.C.C., can be demanded, and the short time period in which the recount results must be compiled and certified to the Secretary of State.

Respondents' third contention is that since § 16–13–15, N.D.C.C., uses the term "county board of canvassers" and not a "recount board of canvassers", results sent to the Secretary of State by a "recount board of canvassers", as in the instant case, would not be within the exception of § 16–13–15, N.D.C.C., allowing corrections, and would not be allowed to be canvassed by the State Board of Canvassers because such recount returns are not a part of the "regular returns made by the county board of canvassers as provided in this chapter". § 16–13–38, N.D.C.C.

■ The language "The . . . [State Board of Canvassers] shall canvass only the regular returns made by the county board of canvassers as provided in this chapter" in § 16–13–38, N.D.C.C., we believe, was employed to clearly point out that the State Board of Canvassers was restricted from counting absentee ballots which arrived too late to be counted by either the election board or the county canvassing board. (The county canvassing board, as distinguished from the State Board of Canvassers, was authorized to count absentee ballots received too late to be counted by the election board.)

■ A recount conducted under § 16–13–47.1, N.D.C.C., and its return is the equivalent of a return made by the county canvassing board. It is a part of Chapter 16–13, N.D.C.C.

■ The recount board in this instance was constituted the same as the county canvassing board (even if others were selected to serve on the recount board, such board performed similarly to a combined function of a canvassing board and an election board). The return of the recount board comes within the provision: "regular returns made by the county board of canvassers *as provided in this chapter* (meaning Chapter 16–13, N.D.C.C.). [Emphasis added.]"

Further, to require that the recount board comply with the exact language of § 16–13–15, N.D.C.C., by sending its certified recount results to the county board of canvassers, who, in turn, would certify the recounted election results to the Secretary of State—would require an idle act since the county board of canvassers would only be acting as a conduit, performing no other function. As stated earlier herein, "The

law neither does nor requires idle acts." § 31–11–05(23), N.D.C.C.

■ Fourth, the respondents contend that since the Secretary of State failed to issue a certificate of election, there is no error to correct as envisioned in § 16–13–15, N.D.C.C. We note that § 16–13–15 calls for correction of any previous certification of election results—such is necessary in the instant case because, although the Secretary of State failed to perform his ministerial duties required of him, pursuant to §§ 16–13–47, 16–13–48, and 16–13–51, N.D. C.C., the State Board of Canvassers did certify that Norma J. Kuhn was the duly elected State Representative from the 41st Legislative District on November 16, 1976. If the Secretary of State had issued a certificate of election to Norma J. Kuhn, such certificate, in light of the recount results, would have had to be revoked. Accordingly, it is immaterial to this action that the certificate of election was not issued in the first instance.

■ Finally, the respondents contend that the State Board of Canvassers cannot reassemble because the statutory time period has lapsed in which they have authority to assemble. Respondents cite § 16–13–36, N.D.C.C., which provides:

> "*Meeting of state board of canvassers.*—On call of the secretary of state but not later than fourteen days next following a primary, general or special election, the state board of canvassers shall meet at the office of the secretary of state for the purpose of canvassing and ascertaining the result of the election. The secretary of state shall notify the other members of the board of such meeting."

Such time provision in § 16–13–36 is a restriction only on the time for the first assembly of the State Board of Canvassers, and is not a restriction on the power of the Secretary of State to reassemble the State Board of Canvassers to canvass returns of a recount and to correct any previous certification of election results.

■ In conclusion, it is our view that demanding a recount is not the same as contesting an election. The former, clearly and unmistakably, has been made and is now a part of the election process, which includes certification by the canvassing board, whereas the latter is a challenge of the election process itself.

For the reasons stated in the opinion, the petition to this court for a Writ of Prohibition is granted and, accordingly, Alfred A. Thompson, Judge of the District Court of Burleigh County, Fourth Judicial District, is herewith commanded to desist from any further proceedings in this matter; the writs issued by said Judge Alfred A. Thompson directed against Ben Meier, Secretary of State, and the members of the State Board of Canvassers dated 1 December 1976 are quashed; the petition of Norma J. Kuhn upon which the writs of the district court were predicated is dismissed; and Secretary of State Ben Meier and the State Board of Canvassers, in light of the court-supervised recount, are herewith directed and commanded to meet forthwith for the purposes of recanvassing the recount of the election ballots and correcting any previous certification of election results for the office of State Representative for the 41st Legislative District.

ERICKSTAD, C. J., and SAND, J., concur.

PEDERSON, Justice (concurring in part).

I concur in the quashing of the writs issued by the judge of the district court of Burleigh County. I do not concur in all that is said about what kinds of things are idle acts. However, I agree that no one should be commanded to perform idle acts. This court engages in an idle act when it commands a board over which it has no jurisdiction (the State Board of Canvassers) to meet and to take any corrective action.

Because § 47 of the North Dakota Constitution must be superimposed upon all statutes assigning tasks to either the executive or the judicial branch of government, in a legislative election contest, only those functions which expedite or facilitate the legislative determination are not idle acts.

If the State Board of Canvassers decides voluntarily to meet and if it recognizes that the legislature will not need any more certifications to show that there is an election contest, then the State Board of Canvassers will conclude that it is not necessary that such board do anything because it would only be an idle act.

VOGEL, Justice (dissenting).

The Ward County Canvassing Board, in the performance of its duties, certified Norma Kuhn as one of the two persons receiving the highest number of votes for the two legislative positions in Legislative District No. 41. Janet Wentz, who received the third highest number of votes, demanded a recount.

When the State Board of Canvassers met, the recount had not been conducted and there was nothing before it to indicate that the results certified to it were incorrect. The Board certified Norma Kuhn as elected and so reported to the Secretary of State. The Secretary of State, upon the advice of the Attorney General, did not issue a certificate of election to Norma Kuhn. Section 16-13-48, N.D.C.C., requires that he do so. It provides:

> "After receiving each certified statement and determination made by the state board of canvassers, the secretary of state shall record the same in his office and forthwith shall make out and transmit to each of the persons declared to be elected, a certificate of election as provided in this chapter. . . ."

I

It appears to me that the Secretary of State has violated the peremptory requirement of a mandatory law, on the erroneous advice of the Attorney General.

If the Secretary of State had done his duty, which is not discretionary but ministerial only [see *State ex rel. Sathre v. Byrne*, 65 N.D. 283, 258 N.W. 121 (1934), which holds that the duties of the State Board of Canvassers and, by inference, the Secretary of State in issuing a certificate of election are ministerial], Norma Kuhn would have a

certificate of election which would be assailable only by quo warranto or by a contest. *State ex rel. Sathre v. Byrne, supra.*

But we are faced now with a situation where the Secretary of State, upon the advice of the highest legal official of the State, has violated the plain requirement of the law. That official now asserts that since the certificate of election is not issued, the State Board of Canvassers may meet again and certify a new winner after a recount held under a statute which I will show justifies a recount but not a recanvass.

II

The Attorney General makes the argument, and a majority of this Court accepts the argument, that two statutes which were enacted at different times and cover different subjects must somehow be connected with each other because otherwise the recount provided for by one statute would serve no useful purpose and would be for only "the personal satisfaction of a candidate who originally lost and was then found to be the winner." In other words, simply because a recount does not in and of itself change the result of an election (which can be changed by other means), we must judicially legislate some mechanism unprovided by statute to accomplish that result. I decline to be a party to such a tortured construction of statutory language.

I will set forth the relevant language of the two statutes, followed by discussion of the arguments of the parties.

A. The recanvass statute (§ 16-13-15, N.D.C.C., last amended in 1969 by Ch. 215, 1969 S.L.):

> "As soon as the returns are received by the county auditor, but not later than five days after each election, the county canvassing board shall meet and, after taking the oath of office, shall proceed to open and publicly canvass such returns. After the initial meeting of the board as provided in this section, any two or more members may call a meeting of the board and upon approval of a majority of the

members, the board shall recanvass the results of the election or any portion thereof and may correct any previous canvass or certification or both in regard to such election. Any correction of any previous certification of election results as provided in this section shall be immediately dispatched to the secretary of state who shall call a meeting of the state board of canvassers as provided in section 16–13–36 for the purpose of recanvassing and, if necessary, correcting any previous certification of the election results."

The language as to recanvassing was added by the 1969 amendment. Before that, the section consisted of only the first sentence of the present section. The 1969 language as to recanvassing was added because of a 100-vote mistake discovered by a county canvassing board after it had reported the election results to the State Board of Canvassers. It was then realized that there was no machinery for correcting such arithmetical errors, and the statute was accordingly amended. It was not amended to allow new evidence as to recounts, since the only recount then permitted was to decide tie votes, and provided for the results to be reported to the *county* canvassing board which would then deliver the appropriate certificate of election. Sec. 16–13–27, N.D.C.C. The present statute on recounts where there is no tie, Section 16–13–47.1, was passed two years later, in 1971.

B. The recount statute, Section 16–13–47.1, enacted in 1971 as Chapter 227, 1971 Session Laws:

"Any person losing a . . . general election contest for . . . election to a . . . legislative office may demand a recount of the ballots cast in the manner and circumstances hereinafter provided. . . . The demand must be made within ten days after the canvass of the votes of such election. . . . After a demand and upon application to a judge of each appropriate district court, such court or courts shall issue orders directing that all ballots pertaining to such office shall be delivered forthwith to the respective court or courts. . . .

The county canvassing board of each county, or such other persons as the court may select, shall recount the ballots in the presence of the court . . . The results of any recount of votes cast in an election of a member of the legislative assembly shall be admissible in either house of the legislative assembly, or before a committee of either house, as evidence to aid in the determination of an election contest pending in that house."

I come now to the arguments based on the statutes.

1. It is to be noted that the judge before whom the recount is made may appoint either the members of the county canvassing board or "such other persons as the court may select" to do the recounting. How then can it be contended that the action of such a group is the action of a county canvassing board? Only action of a county canvassing board can trigger the recanvass by the State Board of Canvassers under Section 16–13–15.

The makeup of a county canvassing board is prescribed by Section 16–13–13. It is made up of three ex-officio members—the clerk of the district court, the county auditor, the chairman of the board of county commissioners, and one representative of the district committee of each of the two major political parties.

To illustrate my point, if the county canvassing board is made up of individuals A, B, C, D, and E, surely no one could claim that individuals V, W, X, Y, and Z, appointed by the district judge to assist him in a recount, are thereby transformed into the county canvassing board. Yet that is what the Attorney General argues and the majority accepts.

In this particular case it appears that some, but not all, of the persons designated by the district judge were members of the county canvassing board. It is immaterial if they were—they were acting under appointment of a district judge under Section 16–13–47.1, not as members of a county canvassing board.

2. It must be noted that the word "recount" is nowhere mentioned in the recanvass statute, and the word "recanvass" is nowhere mentioned in the recount statute. If the Legislature had intended that recounts should be considered by canvassing boards, it surely would have said so in 1971 when it enacted the recount statute, two years after it amended the other statute in 1969 to allow recanvassing.

3. If the Legislature had intended to have recounts considered in canvasses, it surely would have altered the time frame in the statutes. The county canvassing board must meet within five days after the election [§ 16–13–15] and the abstract of votes must be forwarded by the county auditor within eight days after the election [§§ 16–13–20 and 16–13–24]. The State Board of Canvassers must meet not later than fourteen days after the election, and may adjourn for not more than three days' total [§§ 16–13–36 and 16–13–41]. Upon receipt of the report of the State Board of Canvassers, the Secretary of State is required to issue certificates of election "forthwith" [§ 16–13–48].

But the recount procedure provides for a demand within ten days, and the recount result must be certified within fifteen days thereafter. Thus the recount may take a total of twenty-five days, while the entire canvassing may not consume more than seventeen days, with certification to follow "forthwith."

Surely the Legislature could have made this same computation, and made appropriate changes in the timetable if it had intended that the recount should be considered in the canvassing and certification procedure.

4. It is said that the recount procedure would be of no use if it were not considered in the canvass or recanvass. But this is a subjective determination, not based on any statutory language. If we were to search for a motivation for providing for a recount unconnected to a recanvass, it would not be hard to find. I think legislatures in the past have seen some members laboriously recounting ballots for days, while all the other members, using up precious legislative days, waited until the recount was completed so that the Legislature could be organized. I, subjectively, suggest that the recount procedure was set up to avoid the delay and waste of time of the whole Legislature by having the recounting done under controlled conditions prior to the convening of the Legislature.

5. It is argued that the last sentence of Section 16–13–47.1 was not intended to be the only way in which the results of a recount could be used, even though no other possible use is mentioned in the statute. If another use were intended, surely the Legislature would have said so.

6. Along the same line, it is argued that use in recanvass must be intended, because Section 16–13–47.1 applies to Congressional and State offices as well as legislative offices, and the Legislative Assembly has nothing to do with resolution of disputes as to them. This is true, but disputes as to those other offices can be resolved by use of quo warranto or contest procedures [*State ex rel. Butler v. Callahan*, 4 N.D. 481, 61 N.W. 1025 (1895)], while as to legislative contests, "Each house shall be the judge of the election returns and the qualifications of its own members." N.D. Constitution, § 47. It was therefore appropriate for the statute to provide that the results of the recount are admissible in proceedings in the Legislature while omitting the obvious, that the results of a recount of other races would be admissible in quo warranto or contest proceedings.

7. The Attorney General admits that his interpretation of the above statutes is inconsistent with Section 16–13–38, which provides that

> "The state board of canvassers, in canvassing to ascertain the result of any election, shall canvass only the regular returns made by the county board of canvassers as provided in this chapter."

The Attorney General suggests that this section is repealed by implication. I disagree. Repeals by implication are not favored, and the interpretation I have put on all the relevant statutes recognizes the ap-

plicability of all of them, which is the result we must seek if at all possible.

". . . repeals by implication are not favored. There must be a clear repugnancy between the provisions of the new law and the old statute to such an extent that a necessary implication arises that the legislature by enactment of the latter Act intended to repeal the former, and then only to the extent of its repugnancy." *First American Bank & Trust Co. v. Ellwein,* 198 N.W.2d 84, 98 (1972), and cases cited.

8. Both sides agree that a canvassing board cannot reconvene and change prior action once it has performed its duty, in the absence of statutory authority to do so. The Attorney General cites 29 C.J.S. *Elections* § 239, p. 668, and the respondents cite McCrary on Elections, 4th Ed., § 278, p. 209. I agree. Since I can find no statutory authority for reconvening except to deal with a report from a county canvassing board, at the request of two members, and no such meeting of the county canvassing board was held, I would hold that there is no authority to reconvene the State Board of Canvassers.

## CONCLUSION

Having considered all the arguments pro and con, I can only conclude that Section 16–13–15 relates to recanvassing to correct mistakes discovered by county canvassing boards at meetings called by two or more members of those boards, according to its plain terms, while Section 16–13–47.1 relates to an entirely different procedure, for a recount of votes which, in the case of legislative recounts, are to be reported via the Secretary of State to the Legislature. The two are separate statutes, not integrated with each other in any way by the Legislature, and not compatible with each other without doing great violence to the English language and the obvious legislative intent.

The interpretation urged by the Attorney General and adopted by the majority treats a board which may consist entirely of non-members as if it were a board the makeup of which is prescribed by statute (point 1 above); it tortuously reads words into statutes which are not in them (point 2); it implies that the Legislature ignored the time frames set up by its own statutes (point 3); it reads into the minds of the legislators motives other than the obvious one of saving legislative time by having someone else do the recounting before the session starts (point 4); it assumes that the Legislature meant the recount to be used in more ways than one, although it specified only one (point 5); it ignores the fact that other electoral disputes are resolved by quo warranto proceedings, while the Legislature is the judge of the qualifications of its members (point 6); and it requires that a statute be repealed by implication, which is to be avoided whenever possible (point 7). Finally, since there is no statutory authority to reconvene the State Board of Canvassers to consider the results of a recount and it cannot act without such authority (point 8), the Board cannot be recalled into session.

I would affirm the writ of mandamus to the Secretary of State compelling him to issue a certificate of election to Norma Kuhn and forbidding him to recall the State Board of Canvassers. It can be reconvened only upon certification by a county canvassing board of a mistake. No such certification has been made. Recounts are to be reported to the Legislature. An attack on the absent voters ballots rejected in the recount [the basis of the change of result, we are advised, is the rejection of some 200 absent voters ballots not initialed by the inspector] can be made by action for declaratory judgment or otherwise. Such an action or other proceeding could be, and should be, expedited so as to have a determination before the main session begins in January.

In any case, the final judgment as to who was elected will be made by the Legislature.